Kempton *v.* Bartine.

# WILLIAM B. KEMPTON

*v.*

# DAVID H. BARTINE et al.

[Filed October 21st, 1899.]

1. Where a bill is filed which seeks to enforce the specific performance of a contract made with a decedent testatrix, to give and devise her whole estate at her death, the executor of her will, who primarily takes the legal title to her personalty, and who has an equity to require the application of her lands to the payment of her debts (if need be), is a necessary party defendant, without whose presence the cause should not proceed.

2. The practice in such cases is to direct the cause to stand over for a period, with an order that if within the period the necessary party be not brought in, the bill should be dismissed.

3. Where the complainant seeks to enforce the specific performance of a contract, the benefits of which proceed wholly to other persons, the beneficiaries should be classed as complainants, or cause for making them defendants should be stated in the bill.

4. When a devisee is made a party defendant to a bill filed to enforce the specific performance of the contract of his testatrix, he is sued in a representative capacity.

5. The fact that the beneficiaries of a contract sought to be enforced in equity by specific performance are made defendants, and the parties against whom specific performance is asked are also made defendants, in the same bill, does not prevent the beneficiaries and the parties against whom the contract is sought to be enforced from being opposite parties. In equity, parties who are in opposition to each other are often brought into court as defendants.

6. In ascertaining the relations of the parties to each other under the Evidence acts, the court will examine the record to ascertain whether they are in fact antagonistic, and will not be controlled by the voluntary classification of parties made by the complainant in drawing his bill.

On bill, answer and offer of testimony, &c.

The complainant was the brother of Meribah D. Kempton and Annie B. Kempton, his two maiden sisters. In 1894 Meribah died intestate, leaving the complainant and Annie her only heirs and next of kin, to whom all her property descended

in equal shares.    Meribah, at the time of her death, was seized in
fee of the one-half part of a house and lot in Merchantville,
New Jersey, and of· certain stocks, bonds, household furniture
and other personal property.    The complainant alleges that
Annie, after Meribah's death, agreed with him that if he would
allow her to enjoy his share of Meribah's estate during her life,
" she (said Annie Kempton) *would at her death give and devise*
all of the estate or property of every kind of which she should
die seized and possessed to her nieces and nephews," children of
the complainant, except the house *"which she would leave"* to
Cora V. Kempton, the wife of the complainant.    He took out
letters of administration on Meribah's estate, and alleges that he
delivered to Annie all the personalty of Meribah's estate and
that Annie, during her life, used and enjoyed the property.    He
claims that under this contract and its performance on his part,
his wife and children acquired a vested interest in all the real
and personal property whereof Annie died seized, and that she
held that property in trust for his children and wife, " *to give the
same at her death to them.*"

The bill recites that Annie died in March, 1897, testate, and
sets out the will in full as dated February 19th, 1896, and
proven in November, 1897, by the executor, David H. Bartine.
It alleges that Bartine had entered into possession of all of the
personal property of which Annie Kempton died possessed, and
was as executor carrying out the provisions of her will, and
among other acts as executor, was suing the complainant upon
several notes held by Annie in her lifetime, which were made by
the complainant and endorsed by his wife, Cora V. Kempton,      ·
and that Bartine who was devisee of Annie's share in the house,
had taken possession of it.    The bill avers that Bartine, because
of the agreement of Annie with complainant, has no interest in
Annie's real estate and none in her personal, save as trustee for
the complainant's wife and children, and prays that the alleged
contract between the complainant and Annie Kempton may be
specifically performed and carried into execution by the defend-
ants ; that Bartine be decreed to convey the real estate of which
Annie died seized to complainant's wife, Cora V. Kempton,

and to hold the personal of which Annie died possessed as trustee for his children, and to deliver the same to them, or that an accounting be had of Meribah's estate and the complainant's interest therein be returned to him.

The complainant in the bill as originally filed, prayed for answer from the legatees under Annie's will, from his own wife. and children and from Bartine, who was devisee therein, but did not ask answer from him as executor of that will. The prayer for subpœna originally named Bartine in his individual capacity and again as David H. Bartine, executor. Bartine was served with subpœna as executor, and answered the bill in that capacity. The complainant afterwards, before the cause was set down for hearing, obtained an order to amend his bill by striking out Bartine, executor, as a defendant.

The answer of the devisee and legatees denies the agreement between the complainant and Annie B. Kempton, and asserts title in themselves under the provisions of Annie's will, and denies that the children and wife of the complainant have any right or title in Annie's property. The defendant Bartine, as executor, especially answers that he has proceeded as executor of the will of Annie B. Kempton, to settle her estate. Issue has been joined.

In this condition of the pleadings the case came on for hearing. Upon the opening of the cause the complainant called as his first witness his wife, Cora V. Kempton, the person who, by the alleged agreement, was to become owner of Annie B. Kempton's house. The complainant declared that by this defendant he proposed to prove the transaction between the complainant and the decedent, Annie B. Kempton, set out in the bill, and the statements made by the decedent concerning the alleged agreement. It was objected that because of the provisions of sections 3, 4 and 58 of the Evidence act, Mrs. Kempton being a party, was not competent to prove any statement by or transaction with the decedent. This objection called attention to the relation of the parties, and the complainant insisted that Bartine was not a defendant as executor of the will of Annie B. Kempton and that no party was sued in a representative capacity, and

therefore this was no ground for the exclusion of proof of that character. The vice-chancellor inquired of the counsel for the complainant whether the executor of Annie B. Kempton's will was not, under the circumstances of this cause, a necessary party without whose presence the court ought not to proceed to hearing and invited argument upon the point.

*Mr. Martin V. Bergen, Jr.,* and *Mr. Martin V. Bergen,* for the complainant.

*Mr. Howard Carrow* and *Mr. David J. Pancoast,* for the defendant Bartine and others.

GREY, V. C.

The complainant's counsel contend that the executor of Annie B. Kempton's will is not such a necessary party that the cause should be stayed until he be brought in. They argue that the effect of the agreement set out in the bill was to vest immediate legal title in all Annie B. Kempton's personal and real property in the wife and children 'of the complainant, subject to Annie's enjoyment of it for her life, and that upon her death they became entitled to instant possession of both, and that her executor never received any title to the personal or interest in the realty, and therefore need not be a party, and in support of that position cite *Hodge* v. *Coriell, 15 Vr. 456,* and on error, *17 Vr. 354.* If this contention be correct, there would seem to be no occasion for the complainant to ask for relief in equity, because those for whose benefit he made the agreement and for whom the present suit is brought, must in such case be now in the enjoyment of a full legal title to the property which, as to the personalty, is presently recoverable at law in an action of replevin, and as to the real estate, in ejectment. That was the nature of the plaintiff's claim in *Hodge* v. *Coriell,* where he asserted a legal title and sued the defendant individually for the recovering of personalty, and it was held that the defendant's plea that he took the property in his character as administrator, did not alter his position as a party to the record so as to make

the suit against him in his representative capacity. This adjudication was governed by the rigid rules of the law courts which pass upon the rights of the parties to the record, irrespective of the interests of the other persons in the matter in controversy.

The complainant's present contention that the effect of his alleged agreement with his sister Annie was to vest instantly a legal title to the beneficiaries under it, is in manifest contradiction to his statements of that contract in his bill, above quoted in italics. These show that the alleged agreement did not pass a legal title to either the personalty or the realty in question. The complainant avers that his sister Annie agreed that she *would at her death* give and devise all the property, &c. She did not at the making of the agreement give or devise, she only agreed that she would at her death do so. There was by her no delivery of the personalty and no conveyance of the real estate. At the time of her death she held the legal title to both the personal and the real estate. If her agreement was forceful, it did indeed pass an equitable estate to the beneficiaries, but on the complainant's own showing no legal estate passed. When Annie died her executor took a legal estate in all her personalty for purposes of administration, primarily for payment of her debts. He also had, as executor, an equity to have her lands applied for the same purpose. All that the complainant and those claiming under the executory agreement took was the right to have it established and enforced. It is because of the fact that the legal estate of Annie did not pass by her alleged contract that the complainant prays by his bill for its specific performance. A decree for the complainant, to be effectual, must take from the executor his legal title to the personalty and prevent him from using it to pay debts or legacies. The decree sought will also deprive him of his equitable right and duty to have the real estate applied to the payment of debts, if need be. In *Downing* v. *Risley, 2 McCart. 93*, the heirs-at-law of a deceased vendee, by parol contract, sought to compel a conveyance to them by a purchaser from the vendor, who had notice of the parol contract. They omitted to make the administrator of the deceased vendee a party, and Chancellor Green, without demurrer and on *ex parte*

Kempton v. Bartine.

hearing, declared *ex mere motu* that the administrator had an interest, not only because he might have to pay the purchase-money if the contract was established, but also in behalf of the creditors of the deceased vendee, for whom he had an equity in the real estate of his intestate, and that he should be made a party. In *Colfax* v. *Colfax, 5 Stew. Eq. 206,* it was proposed to strike out the administrator of a deceased covenantor to convey lands as a defendant, but Chancellor Runyon held that he was a proper party, since the lands of the decedent might be necessary to pay debts, and the administrator had an equitable right to apply them, and should be heard before decree. In the case in hand, it is alleged that the consideration for the conveyance sought to be enforced was paid in full to Annie B. Kempton in her lifetime, but there is no answer to the suggestion that her executor is a proper party—first, because he is the holder of the legal estate in the personalty of which Annie died possessed, and secondly, because he has an equity to apply her real estate in payment of her debts. Both these interests are immediate and unrepresented by any other defendant, and must be heard before decree. The defendant Bartine is already a party in his capacity as devisee. He is within the jurisdiction and may readily be made a party as executor of Annie B. Kempton.

There is a wide difference between the mode of procedure at law and in equity touching the bringing in of parties to a suit. At law, save in a very few instances, the defendants who are called upon to respond are selected by the plaintiffs in the suit, and the court accepts the record as thus made up; but in equity, if it appears that there is a person, not in court, who holds an outstanding interest, the court will stand the cause over until the bringing in of that party. In equity, every person interested in sustaining or defeating the object of the suit should be a party and be heard before decree. *2 Story Eq. Jur.* § *1526.* The spirit of the procedure in equity is to settle once and for all in one suit all disputes concerning the object of the litigation. Lord Hardwicke, in *Jones* v. *Jones, 3 Atk. 110,* directed a cause to stand over until the proper parties defendant were brought in, though the objection was admittedly (so far as the defendant was

concerned) taken too late, on the ground that the court could not do justice without the presence of the absent parties who appeared to have an interest in the object of the suit.    Sir John Leach, in *Farquhar* v. *Seton*, declared that where the defect of parties is apparent on the record, the court will take the objection, though the defendant does not, for on appeal, if there be a defect of parties, the court of appeals will send the case back.    *Calv. Part. *116, note 3.*    This course was followed in this state in *Merritt* v. *Merritt*, several times reported, *16 Stew. Eq. 11, 3 Dick. Ch. Rep. 1, 6 Dick. Ch. Rep. 638.*    The first hearing was in this court on demurrer, one of the grounds of which was the absence of a proper party.    This demurrer was overruled and no appeal taken.    The cause afterwards came to hearing and decree upon its merits.    On appeal from this decree on the merits, the court of appeals, on the first presentation of the cause, was of opinion that the party whose omission from the record caused the demurrer, must be made a defendant, and refused to hear argument, and sent the cause back to the court of chancery to have the absent party brought in.    The necessary amendment was made in this court, the party was brought in and the cause was returned to the court of appeals with the additional party defendant, and on the hearing the decree was affirmed.    This action of the court of appeals is not indicated by any of the reports of the case, but will appear upon an examination of the files.

One point made in the complainant's brief is somewhat surprising.    It is contended that "Bartine is before the court for any decree which may be made against him, either individually or as executor."    In support of this contention, cases are cited to the effect that where the bill sets forth facts which make the defendant liable as executor, it is useless form to require that either party should be so styled in the commencement or conclusion of the bill.    Such an argument necessarily assumes that the order of this court, duly made in this cause upon the application of the complainant, striking Bartine, as executor, from the bill as a defendant, is nugatory.    Can it be that he is a defendant as executor so far as it may be necessary to take from him by decree the property which he is alleged to be adminis-

tering, but is not a defendant, as executor, to make a defence and have the privileges which in that capacity belong to him? It is not necessary to discuss the principle of pleading involved in the cases cited, for it certainly cannot apply to make an executor liable as a defendant when he has, by an order in due form, been stricken from the record as a defendant in that capacity. If this principle is hereafter to be invoked in this cause, to broaden the effect of a decree if favorable to the complainant, it is but equitable that the complainant should now formally make the executor a defendant as such, that he may, on the hearing, assert his rights in setting up his defence.

The argument advanced by the complainant that Bartine is not a necessary party in his capacity as executor because the effect of the agreement was to divest the testatrix of all title in the property, and that she therefore left nothing of which her executor could become possessed, is also untenable because it assumes as an established fact the very matter put in issue and not yet heard, namely, that there was such an agreement and that it was instantly effectual to strip Annie B. Kempton of everything save a life estate in her property. In the present position of the case it is denied that there was any such agreement. The burden is upon the complainant to prove his allegation that there was such a lawful contract made by Annie B. Kempton in her lifetime. In order properly to controvert that claim, her executor, who, under her will, is in actual possession of her property, who has, primarily, the right to apply it in payment of her debts, and who alone can protect the rights of her creditors, must be a party defendant in the cause.

Several cases are cited by the complainant's counsel to support their argument that the executor of a decedent who has made such a contract to convey, receives no title upon the death of the decedent, but they do not meet this point under consideration. *Van Duyne* v. *Vreeland, 1 Beas. 142,* upon which the bill in this cause appears to have been framed, does not raise the question now under consideration. The agreement was there sought to be enforced in the lifetime of the alleged vendor of the property, against him and his alleged fraudulent grantee.

There was no occasion to make his executor a party, for the testator was alive to make his own defence. In *Davison* v. *Davison, 2 Beas. 246*, and in *Pflugar* v. *Pultz, 16 Stew. Eq. 440*, the bills for relief were also filed in the lifetime of the vendor. In *Kastell* v. *Hillman, 8 Dick. Ch. Rep. 49*, the bill was filed against voluntary grantees of the vendor. In none was the *status* of an executor of the vendor discussed.

The practice, in cases where a necessary party without whose presence a decree cannot be pronounced is omitted from the record, is to direct the cause to stand over for a period in order that he may be brought in, and that if this be not done within the period named the bill be dismissed. *Calv. Part. \*116 ; 1 Dan. Ch. Pr. \*287, note 2 (6th Am. ed.)*, and cases there cited.

I will advise the making of such an order.

The objection taken to the giving, by Mrs. Cora V. Kempton, of any testimony as to any transaction with or statement by the decedent, Annie B. Kempton, has also been argued by counsel for both parties, and may as well be decided at this stage of the proceedings.

The defendants contend that the legatees and devisees under the will in this cause are sued in a representative capacity, and that this, under the third and fourth sections of the Evidence act (were they now in force and not modified), would preclude any party to the suit from being sworn, unless the representative was first called as a witness in his own behalf; that the act of 1880 (section 53) only modifies the operation of the previous prohibition so as to admit the party other than the representative to be sworn without any previous calling of the representative on his own behalf, but that the other party when so sworn is not, by the act of 1880, authorized to testify as to any transaction with or statement by the decedent represented in the cause.

The complainant insists that none of the defendants are sued in a representative capacity, and also that even if the legatees and devisees are representatives of the decedent testator, yet Mrs. Kempton, the witness on the stand, is with them a co-

Kempton *v.* Bartine.

defendant and not an opposite party, to whom only, as they contend, the prohibition extends.

In the present situation of this cause Mrs. Cora V. Kempton is the first witness called, and it is therefore indisputable that she is not qualified in any way by the previous calling of the representative, so that this point need not be discussed.

Are the defendants sued in a representative capacity?

The suit is brought to enforce the specific performance of a contract made with the decedent in her lifetime. It is alleged in the bill that Miss Kempton agreed that at her death she would devise her land to Mrs. Kempton, the complainant's wife, the witness now on the stand, and give her personalty to the complainant's children. Instead, she, by her will, devised her land to the defendant Bartine, and gave her personalty to legatees, of whom the complainant's children were but a part.

The legal title to the property in question remained, as the complainant states the contract, in Miss Annie B. Kempton. During her lifetime the complainant alleges he fully performed his part of the agreement. He had no sufficient evidence of the contract, and might in her lifetime have filed his bill against her for a decree declaring and establishing it, so that at her death her property would pass as they had agreed it should, as was done in *Van Duyn* v. *Vreeland* and other cases above cited. The complainant brought no such suit in the lifetime of the decedent. At her death, by the operation of her will, the legal title to the property passed to her devisee and legatees, and the complainant now seeks by this suit to establish and enforce against her devisee and legatees the contract of the testatrix by compelling them to perform it. They are invited into court to admit or deny, not an agreement of their own but an agreement of the decedent. They are sued because they represent her ownership of the legal title of the property in dispute affected by her agreement, and for no other reason. If she were alive not one of them could be made a party defendant. They stand for and represent the defence she might have made. They must be held to be sued in a representative capacity. This ruling stands, with the holding of this court in *Colfax* v. *Colfax,*

*5 Stew. Eq. 206,* where the bill was filed, as in this case, to
enforce the specific performance of the contract of a decedent.
The defendants were the heirs-at-law. It was held that if the
claim is by or against the heir as such, he sues or is sued in a
representative capacity within the meaning of the law. The
learned Vice-Chancellor Van Fleet, in *Crimmins* v. *Crimmins,
16 Stew. Eq. 88,* was of opinion that the act of 1880, as inter-
preted by the case of *Hodge* v. *Coriell, 15 Vr. 456,* and *17 Vr.
354,* had so limited the meaning of the word "representative"
as to exclude heirs from the classification, and had thus over-
thrown the case of *Colfax* v. *Colfax* as a precedent. *Hodge* v.
*Coriell* determined that when a plaintiff brought suit against a
defendant without, on the record, calling upon him to respond
in a representative capacity, the defendant could not, by so
responding in his plea, put himself in the category of one who
was sued in a representative capacity. It was there held that
it was not enough that he was interested in the subject of the
litigation as the representative of the decedent. He must be
sued in the capacity in which he represents the decedent. The
plaintiff's object in the suit must, by the record, appear to be to
enforce some right against the defendant as a representative of
the decedent.

In that case nothing appeared in the record which showed
that the plaintiff had sued the defendant in a representative
capacity to enforce any right arising out of a transaction with
the decedent. It is a different matter when a complainant
alleges, as in this case, that he is entitled to have decreed the
specific performance of an executory contract made with a de-
cedent, and calls the heir or devisee of the decedent into court
to respond to that allegation. The complainant here sues the
heir or devisee to establish and enforce the contract of his ances-
tor or testator, and the defendant must respond and defend in
the right of the decedent. The defendant in such a case is
brought into court not in his own right, but as representing his
testator, whose contract is alleged and is in the suit sought to
be established. Having been by the complainant invited to
respond in a representative capacity, the disabilities in giving

testimony which the statutes impose apply. This view is, I think, not only within the spirit of the legislation in question, which is intended to prevent one having a claim against the decedent's estate, arising under some transaction with the decedent, from "swearing it through" by the uninvited tender of his own oath in proof of it, but is also within the fair construction of the words of the statutes in question. In *Joss* v. *Mohn*, *26 Vr. 407*, the late Chief-Justice Beasley and Mr. Justice Dixon (who joined in the opinion of *Hodge* v. *Coriell*) concurred in the declaration that in an action against devisees to recover money loaned to their testator, the devisees are representatives of the deceased testator, and the plaintiff is incompetent to testify as to any transaction with or statement by the testator. Irrespective of previous conflicting declaration this adjudication has been accepted in this court as expository of the law, in a suit brought by one claiming the specific performance of a contract of sale made by a decedent against her heirs-at-law, who were held in such a suit to be representatives of the decedent. *Greenwood* v. *Henry, 7 Dick. Ch. Rep. 448.*

If there be any question whether, under the decisions construing the evidence statutes, legatees and devisees are representative parties where the suit is based upon rights which are alleged to have arisen under the contract of their testator, there can be no doubt that an executor, when sued as such to enforce his testator's contract, is a representative party. On this all the decisions agree. On the point whether Mrs. Kempton shall be permitted to testify as to a transaction with or statement by the decedent whom Bartine represents as executor, the question must be considered as if the executor had been brought in as a party defendant under the ruling above given. This being the situation of the case, there can be no doubt that one at least of the parties is sued in a representative capacity.

There remains the question whether Mrs. Cora V. Kempton, who, under the contract set out in the bill, is the beneficiary entitled to the decedent's real estate, and who is made a party defendant solely for that reason, may, in a suit against a representative of the decedent to enforce that contract, give testimony

as to transactions with the decedent in support of the complainant's case. It is claimed that she may do so, because her *status* in the suit is that of a co-defendant and that she is not an opposite party to the representative. Mrs. Kempton is a party to the suit.

The devisee and legatee of the decedent, Annie B. Kempton, are in this suit parties who are sued in a representative capacity. The executor must be deemed to be such a party. The third section of the Evidence act declares "that no party shall be sworn in any case when　*　*　*　either of the parties sue or are sued in a representative capacity," except the representative be called as a witness in his own behalf and be admitted, &c. The exception had no application in this case, as Mrs. Kempton is the first witness called on either side. The words of the third section appear to prohibit Mrs. Kempton from being sworn. The fifty-third section (*Gen. Stat. p. 1407*) removes the prohibition against her being sworn, but does not authorize her to testify to any transaction with or statement by the decedent who is represented in the suit. To enable her to do this, the representative of the decedent must first have been called in his own behalf and have testified to some transaction with or statement by the decedent. *McCartin* v. *McCartin, 18 Stew. Eq. 265.*

The defendants contend that Mrs. Kempton may testify as to transactions with the decedent because she is not an opposite party to the representative. But the whole frame of the bill shows that she is an opposite party. It is filed in her own and her children's interest to declare and enforce the decedent's contract, and to take away the decedent's whole estate from the other defendants who represent the decedent. There is no other object in the suit. Mrs. Kempton and the representatives of the decedent are in the most precisely-defined antagonism to each other. The complainant and his wife and children unitedly claim under the alleged contract and assert its validity; the legatees and devisee of the decedent unitedly claim under the will and deny the validity of the contract. The success of either must result in the total defeat of the other. The opposition could not be more complete.

Mrs. Kempton and the children of the complainant are, it is true, by him placed in the bill with the representatives as defendants. But such a voluntary classification by the complainant cannot alter the fact that they are opposite parties. In equity parties who are not in privity and whose interests in the suit are in opposition to each other are frequently brought in as defendants. The statute in stating the prohibition did not declare that no complainant should be sworn unless the representative defendant were first sworn; it puts the prohibition upon the ground that the parties are opposite, and should in equity be held to refer to their opposition in fact and not in classification.

Generally speaking, all persons having the same interest should stand on the same side in a suit, and if one identified in interest with the complainant is made a defendant, the bill should charge that he refused to join as complainant. *Calv. Part. \*11, note 3.* There is no such charge in the bill in this case. The complainant, however, prays no relief against Mrs. Kempton or against any of her children, nor does the bill show any ground for discovery from them. No reason appears for making them defendants rather than complainant, and it may, without violent presumption, be believed that Mrs. Kempton was put in as a defendant rather than a complainant, in anticipation of the present situation, in order that she might with more plausibility be called as a witness to support the complainant's claim.

Equity regards the essential truth and not the form or color of the matter presented, and will not, because its practice permits the association of opposing parties as defendants, declare them not to be opposite parties and deprive them of rights to which as opposite parties they may be entitled.

In equity mere association of parties has not been allowed to prevent the consideration and determination of the opposing equities of parties classed on the same side. Decrees have been pronounced in favor of some of the complainants against the defendants and another of the complainants, where it appeared the relation of the parties to the proofs called for such decrees. *Rafferty* v. *King, 1 Keen 619.* It is common practice to grant

Kempton v. Bartine.

a decree whereby the rights of one defendant are held to be superior to those of another defendant, as in foreclosure and other suits where the order of priority of liens is declared. In interpleader cases the defendants are brought into court, and jurisdiction is assumed over them because they hold opposing claims, hostile to each other, between which the complainant cannot safely himself decide. These cases go to show that in equity the classification by name as defendants does not prevent those within that classification from being opposing parties.

The case under consideration is of itself an example. The contract, as alleged, was made solely between the complainant and the decedent, but all the benefits were to come to his wife and children. They should have been made complainants had the parties been properly classified. Had this been done they, without doubt, could not, because of the prohibition of the statute, have testified to prove the contract with the decedent now sought to be enforced. It is now claimed that the mere voluntary classification by the complainant of these beneficiaries as defendants makes them competent to testify within the prohibited range. This is not the purpose or spirit of the legislation on the subject. The court of appeals, in a matter involving, as does this case, the competency of testimony, declared that "it is the province of the court to so control the conduct of a cause and regulate its practice that no unfair advantage is taken by either side in presenting the merits for decision." *Walker* v. *Hill's Executor, 7 C. E. Gr. 518.* In *Smith* v. *Burnet, 7 Stew. Eq. 219,* the account of an executor was excepted to because he had omitted to charge himself with certain items of the estate. He was himself the representative, and he went on the stand as a witness to support his claim that transactions between him and the testator justified his omission of the items. The words of the statute nowhere prohibit a representative from tendering himself as a witness to the fullest extent. But the prerogative court held that the executor in this case, seeking to show his dealings with the decedent in his lifetime, was not called by any party interested in the account within the meaning of the act of 1880, and that he was not competent to testify as to any trans-

action with or statement of the testator. This view was affirmed on appeal, and the court of appeals declared that " in enforcing the object of the statute courts will look at the substance of the cause and observe, through the forms of procedure, who are the real parties whose interests are antagonistic, and then will see that when one is put at a disadvantage by death the other shall not be permitted to profit by the misfortune of his adversary." *Smith* v. *Burnet, 8 Stew. Eq. 321.*

To permit the witness on the stand to testify to transactions with the decedent solely because the complainant calls her a defendant would be to take from the decedent's representatives one of their greatest safeguards and to deprive them of a substantial right.