The complainants filed their bill praying a partition, by sale, of 324 Highland Avenue, Westville, Gloucester County. The premises consist of a town lot improved with a two-story, two-apartment building which, by the last will of Karl Yuritch, was devised to the complainant Charles J. Yuritch and the defendant V. Lester Yuritch. When he executed his will, June 8th, 1942, Karl Yuritch was a widower; a few months later he remarried, and the defendant-counter-claimant, Elizabeth Yuritch, is his widow.
In the bill it was alleged that the devisees, Charles and Lester Yuritch, were seized of the apartment property in fee, subject to the right of dower of Elizabeth Yuritch. She filed an answer, denying that she had only a right of dower in said premises and declaring that by reason of a certain oral *Page 441 
agreement entered into by her and her husband shortly after their marriage she became entitled, upon his death, to an undivided one-half of the fee and to dower in the other half. She also filed a counter-claim wherein she alleged that at the time of her marriage to Karl Yuritch, September 6th, 1942, he was advanced in years and was unemployed; that she owned and operated a "beauty parlor" and was self-supporting; that shortly after their marriage he proposed that she clothe herself, provide for her personal needs, and provide food for them out of her separate earnings and that, in consideration thereof, he would make a valid will and testament in which he would devise and bequeath to her all of his property, real and personal; that she agreed thereto, and fully discharged all of the obligations so imposed upon her; that he subsequently asked her to accept one-half of his estate so that he could devise and bequeath the other half to his son Lester, and that she agreed. She prays a specific performance of the alleged contract and confirmation of her right of dower in the undivided half of the apartment premises she does not claim in fee.
The widow specifically objects to sale of her dower, arguing that it may not be decreed to be sold because she has not given her consent. She relies upon the statutes, R.S. 2:71-66 and2:71-67, and particularly the provision of the latter act calling for the consent of the particular tenant to a sale in partition. But, R.S. 2:71-66 concerns a physical partition of the land, R.S. 2:71-67 relates to lands limited over, and both statutes must be construed with R.S. 2:71-69 which expressly empowers this court to "consider all the circumstances of the case, and having regard to the interests of all parties concerned, determine whether such right or estate [of dower or curtesy] shall be excepted from the sale of the premises or sold therewith, and order or decree accordingly." The same objection was made and the same reasoning advanced in Bleecker v.Hennion, 23 N.J. Eq. 123, 124, where, as here, dower had not been assigned and the widow of the deceased owner held possession of the premises sought to be sold in partition. Vice-Chancellor Dodd held the contention to be untenable, and his decision must be my guide. *Page 442 
See, also, Spinning v. Spinning, 41 N.J. Eq. 427, 430;5 Atl. Rep. 278; affirmed, 43 N.J. Eq. 215; 10 Atl. Rep. 270; Moffett
v. Trent, 66 N.J. Eq. 143, 145; 56 Atl. Rep. 1035; Portnow v.Portnow (Court of Errors and Appeals), 90 N.J. Eq. 570, 572;107 Atl. Rep. 148; Radley v. Radley (Court of Chancery),78 N.J. Eq. 170; 78 Atl. Rep. 194; and, Pellitteri v. Mancuso
(Court of Chancery), 136 N.J. Eq. 323; 41 Atl. Rep. 2d814.
The complainant Charles J. Yuritch and the defendant V. Lester Yuritch share possession of the premises with the widow; their tenant occupies one apartment, the widow occupies the other. It would not be practicable to physically partition the premises or to assign dower by division of the land. Having regard to the interests of all the parties here concerned, it is obvious that the premises should be sold and that the widow's dower right should be included in the sale.
Next we have the insistment of the defendants named in the counter-claim that the counter-claimant has not established the contract she asserts. It is pointed out that she made the executor of her deceased husband a party to this cause, and argued that she thus precluded herself from testifying as to any statements made by the decedent or to any transactions had with him. The inhibitory provision of the Evidence Act, R.S. 2:97-2, is invoked. That statute reads:
"When one party to any civil action is a lunatic suing or defending by guardian or when one party sues or is sued in arepresentative capacity, no other party thereto may testify as toany transaction with or statement by the lunatic while of sound mind or with or by the decedent, unless: (a) The guardian of the lunatic or the representative of the decedent offers himselfas a witness on his own behalf, and testifies to any transactionwith or statement by his testator, intestate or ward," c. (Italics supplied.)
It is argued for the counter-claimant that Charles J. Yuritch and V. Lester Yuritch became parties to this cause as devisees and, as the executor was not made a party to the original bill, the prohibition of the statute does not apply. This is specious reasoning, and it was rejected by this court in Kempton v.Bartine, 59 N.J. Eq. 149, 159; 44 Atl. Rep. 461; affirmed,60 N.J. Eq. 411; 45 Atl. Rep. 966. Vice-Chancellor *Page 443 
Grey there remarked: "The defendant in such a case is brought into court not in his own right, but as representing his testator, whose contract is alleged and is in the suit sought to be established. Having been by the complainant invited to respond in a representative capacity, the disabilities in giving testimony which the statutes impose apply."
Mr. Justice Heher, speaking for our Court of Errors and Appeals in Bankers Trust Co. v. Bank of Rockville Center Trust Co.,114 N.J. Eq. 391; 168 Atl. Rep. 733, declared: "The bar of the statute extends to all transactions with, or statements by, the testator or intestate represented in the action, unless the representative offers himself as a witness on his own behalf, and testifies to a transaction with or statement by his testator or intestate. The design of the rule of evidence prescribed by this statute is to produce equality between the parties, by silencing the one who may, by his own mouth, be able to testify to transactions and conversations with the decedent, possibly to the disadvantage of his estate, unless the representative of that estate should, by his own conduct, remove the interdict.Hoffman v. Maloratsky, 112 N.J. Eq. 333. The test laid down for ascertaining what is a `transaction with' the deceased, within the intendment of the statute, is `to inquire whether, in case the witness testified falsely, the deceased, if living, could contradict it by his own knowledge.' Van Wagenen v.Monnot, 74 N.J. Eq. 843; Campbell v. Akarman,83 N.J. Law 567. Measured by the test thus prescribed, this evidence was inadmissible."
It is true that the executor testified in the instant case. But, he did not offer himself "as a witness on his own behalf;" he was called and interrogated for the complainants; and he did not testify to any transactions with or statements by his decedent. The mere fact that he was a witness does not make admissible the counter-claimant's testimony as to statements by, or transactions had with, her husband, which she alleges resulted in the contract she seeks to have enforced. Her testimony was only tentatively received. It has not been considered in resolving this case.
While equity will specifically enforce a parol agreement to make a will devising or bequeathing property when the *Page 444 
claimant has, upon his part, completely performed it, such a contract is regarded by the court with suspicion and, when enforcement is sought, is subjected to close scrutiny. For such a contract to be enforced, it must be clearly proven, it must be mutual, it must be definite and certain both in its terms and as to its subject-matter, and it must clearly appear that that which is alleged to have been done in part performance was referable to and consequent upon the contract alone, and done to carry it into effect. Vreeland v. Vreeland (Court of Chancery), 53 N.J. Eq. 387; 32 Atl. Rep. 387.
The contract alleged by the counter-claimant obviously is not certain in all its terms. She bespeaks a decree affirming her right to a dower interest in the undivided half of the premises which she avers should have been devised to Lester; she does not aver that this was a part of the agreement; her counter-claim states only that "in consideration thereof he would make and execute a valid Last Will and Testament by which he would leave her one-half of his property and estate."
When we disregard the testimony of the counter-claimant as to statements made by decedent and transactions had with him, the contract upon which she relies for relief was not definitely and certainly established. The testimony of the semi-professional match-maker who introduced the counter-claimant to Karl Yuritch, of counter-claimant's sister, of her grocer and of her friend the nurse, proved no more than that decedent had expressed an intention to make a will favoring his wife. As was said by Chancellor Zabriskie, in Eyre v. Eyre, 19 N.J. Eq. 102, 103,
proof of admissions by the decedent in casual conversations with witnesses who had no reason for noticing with accuracy what he said, "is the weakest and most unsatisfactory kind of evidence." In the present instance the testimony falls far short of clearly establishing a contract, mutual in its obligations, and definite and certain in its terms.
An additional bit of testimony is stressed by the counter-claimant. When Lester's wife Laura was cross-examined, she used the word "agreement" in attempting to repeat a statement made to her by the decedent when he was in bed *Page 445 
suffering from a fractured pelvis. But, the agreement to which she referred was, if anything, an agreement of Elizabeth Yuritch to personally care for him during that particular incapacity. It was not the agreement the counter-claimant asserts and upon which she relies for relief. The true purport of the testimony of Laura Yuritch was that Mr. Karl Yuritch did not wish a professional nurse because his wife had promised to care for him, and that his wife had failed him; that she would not give up her work to care for him, and was with him only in the evenings.
For the reasons given, I shall advise a decree dismissing the counter-claim and directing that sale be made of the real estate, such sale to include the right of dower.