Nov. Term,
1855.

THE TRUS-
TEES OF THE
WABASH AND
ERIE CANAL
v.
THE STATE.

*J. Ryman,* for the appellee.

---

## THE TRUSTEES OF THE WABASH AND ERIE CANAL *v.* THE STATE.

A Court of equity can not dispense with a statute or a contract, yet it may exercise its discretion in regard to enforcing it.

The act transferring the *Wabash and Erie Canal* to trustees, for the benefit of the creditors of the state, and the act of *January* 27, 1847, supplementary thereto, do not render it imperative upon the trustees to construct side-cuts; nor make it the duty of the trustees to reconstruct any part of the canal which was completed by the state, in order to enlarge the supply of water.

*Saturday,*
*December* 8.

APPEAL from the *Montgomery* Circuit Court.

PERKINS, J.—Bill in chancery to enforce the specific performance of an act supposed to be enjoined by statute. The bill was filed by the state against the *Trustees of the Wabash and Erie Canal.* An answer was filed; depositions were taken; the cause was submitted; and a decree for a specific performance was rendered.

The facts necessary to an understanding of the case, are few, and follow.

On the 19th of *January,* 1846, an act was passed by the legislature of this state, transferring to trustees, for the benefit of the creditors of the state, the *Wabash and Erie Canal.* The act contains a great many provisions defining the terms, conditions, and objects of the transfer, with the various duties to be performed by the respective parties. The act was understood to be an arrangement or

settlement of a large amount of the state debt. It con-
tained this provision:

"It shall be the duty of said trustees to take charge of
said canal, with all its appurtenances, and canal lands and
property, and adopt and put in execution such plans and
measures as they shall deem most expedient for the prose-
cution and completion of said canal, with its necessary
side-cuts and feeders, to *Evansville*, within the period here-
in before prescribed." And again, in the same section, it
is said the trustees "shall do all the acts needful and
proper in and about" "the completion of said canal to
*Evansville*, with necessary side-cuts and feeders, particu-
larly the side-cuts and locks to the *Wabash* river, in sec-
tions 136 or 137, between *Coal* creek and *Terre Haute*,
and on sections 33 or 34, and 46, as heretofore surveyed,
between *Coal* creek and *Lafayette*, heretofore contem-
plated."

On the 27th day of *January*, 1847, an act supplemen-
tary to the foregoing was approved, which contained this
section:

"And be it further enacted, that the said trustees shall,
and it is hereby made their duty, to construct and com-
plete all the feeders, feeder dams, side-cuts and reservoirs
contemplated in this act and the act to which this is a
supplement, contemporaneously with the construction and
completion of the main canal: provided however, that
where said canal has already been so constructed beyond
any point where such feeders or side-cuts are located and
intended to be constructed, as specified in the act to which
this is a supplement, it shall be the duty of said trustees
to construct and complete all such feeders and side-cuts
within eighteen months from and after the acceptance of
this act, by our bond-holders: And be it further provided,
that said side-cuts shall be constructed of the same ca-
pacity with the main canal."

The canal was designed to be, and since constructed, is,
a great commercial highway between the northern lakes
and the *Ohio* river, a long link in the chain of internal
water communication between the great southern and

Nov. Term,
1855.

THE TRUS-
TEES OF THE
WABASH AND
ERIE CANAL
v.
THE STATE.

northern markets, *New-Orleans* and *New-York*. To open such a communication as would be for the accommodation and advantage of the general trade and business of a large portion of the state, and make the canal a paying investment, was the great object of the undertaking.

Side-cuts consistent with, and promotive of the main design, were contemplated; and some supposed favorable locations for them indicated, before the main line of the canal was put in operation, and the question as to the sufficiency of the supply of water for purposes of navigation tested, and before the canal was transferred to its present owners.

As has been intimated, the canal was transferred by the state, upon a liberal consideration, to her creditors, who received it in the confidence that it would be a sure source of revenue to a given amount.

The main line of the canal had been constructed and long enough in operation, before this bill was filed, to demonstrate the fact that there is an insufficiency of water to render it navigable to the extent the business upon it demands, and that to construct the side-cuts would greatly impair its too limited usefulness by exhausting a portion of the present insufficient supply of water, would create a useless expense, and diminish the already deficient revenues of the whole work; would, in short, be injurious to both parties to the sale of the canal—the state and her creditors. On this ground the trustees refused to make the side-cuts. But notwithstanding the construction of these cuts would be detrimental to the interests of the people of the state generally and her creditors, it was supposed that it might be beneficial to a few persons at the termination of the cuts respectively, and this bill was filed to compel the trustees to prosecute the work for their benefit, and the question is, should a Court of equity decree the work to be done? We shall not elaborate our answer to the question. Even were the language of the statute imperative upon the trustees to make the cuts, it would be doubtful, under the changed circumstances, rendering it inexpedient that the cuts should be constructed, whether

it would not be the duty of the Court to leave the state to seek her remedy by insisting on the forfeiture and return to the state of the canal, on account of the non-compliance with the condition, if such a consequence might follow; for, while equity can not dispense with, it may exercise its discretion as to enforcing, a statute as well as a contract. See *Pratt et al.* v. *Carroll*, 8 Cranch 471.— *The Mechanics' Bank* v. *Lynn*, 1 Peters 382. But we do not think the language is imperative. We think it was intended to leave a discretion in the trustees. Taking the whole act together, and construing its language in connection with the object to be accomplished, and according to the principles of common sense, we think the requirement is that the necessary side-cuts shall be constructed, and that the trustees shall do all that is proper to ascertain where they might be necessary; and particularly whether those involved in this suit were, and, if so, to construct, &c. We do not think the act intended to require the construction of a useless, much more of a positively injurious side-cut.

Nov. Term, 1855.

THE TRUS-
TEES OF THE
WABASH AND
ERIE CANAL
v.
THE STATE.

We are told that by enlarging the size of the canal beyond that adopted by the state, and reconstructing a portion of what the state had completed, a supply of water *might* be furnished; but there is no express or implied obligation on the part of the trustees to incur the expense of such undertakings.

Nor would the construction of the side-cuts in question be useful, even if the trustees should, for the purpose of improving the navigation of the main line of the canal, undertake its enlargement; for the business furnished by the side-cuts would never pay expenses.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, with instructions to the Circuit Court to dismiss the bill.

*W. D. Griswold*, *H. S. Lane* and *S. C. Willson*, for the appellants.

*J. R. M. Bryant*, *R. A. Chandler*, *C. H. Test* and *H. O'Neal*, for the state.