Watson et al. *v.* Mahan et al.

WATSON *et al. v.* MAHAN *et al.*

SPECIFIC PERFORMANCE.—*A*, an aged bachelor, in feeble health, promised *B*, a physician, and *M*, his wife, that if they would occupy a certain house, then owned by him, and permit him and his nurse to live in it with them, board the two, and tend upon and take care of him as long as he lived, he would convey the house to *M*. *B* and his said wife accepted the offer, took possession of the house, worth about 3000 dollars, made improvements on it worth about 200 dollars, received *A* and his nurse into the house, boarded the two, gave medical and every other proper attention and care to *A* until he died, about nine months after the occupancy of the house begun. Suit against his heirs for title to the property.

*Held*, 1. That the contract was a proper one for specific enforcement.

2. That the fact that *A* occupied rooms in the house, did not create a divided or mixed possession, so as to effect the rights of the plaintiffs.

3. That, under the circumstances, the consideration for the property can not be considered inadequate.

4. That, in the action for specific performance, it was not competent for the defendants to offer any evidence as to the value of the annual rental of the property, or of the services rendered *A* by *B* and his wife.

5. That *A's* executor, who was also one of his devisees, was not a necessary party to the action in his character of executor.

APPEAL from the *Vigo* Circuit Court.

PERKINS, J.—Suit for specific performance of a contract for the conveyance of real estate. The complaint alleged that the contract was by parol; that it was partly executed by possession taken, purchase-money paid, and improvements made.

The answer consisted of the general denial, and several special paragraphs, stating the facts of the case differently from the statement in the complaint, and showing argumentatively that there was not a contract made and partly executed, as alleged in the complaint. These special paragraphs amounted severally to the general denial of the contract upon which the plaintiff claimed to, and was necessarily bound, to succeed, if he succeeded at all.

The cause was tried by a jury, who found for the plaintiff, under instructions as favorable to the defendants as they could ask, and more so, on some points, than, by law, they had a right to claim.

And here a question suggests itself.

This is a suit for specific performance. Under the former practice, it belonged exclusively to the equity side of the court, and was tried by the Chancellor. In trying causes of this character, the Chancellor had two points to consider and determine, viz: 1. Whether a contract, in fact, existed which might be enforced; and 2. Whether the surrounding circumstances were such as rendered it equitable, in the exercise of a sound discretion, that it should be enforced. See *Ash* v. *Daggey*, 6 Ind. 259; *The Trustees of the Wabash and Erie Canal* v. *The State*, 7 Ind. 180.

And these same questions still arise, or may arise, in suits for specific performance, under the new Constitution and Code of Practice; and the question will arise in all suits to be tried, on the demand of either party, by a jury. And if they are thus tried, will both of the foregoing questions be-

Watson et al. *v.* Mahan et al.

long to the jury? Or will the jury find the facts only as to the contract, its part performance, &c., and leave the second question, the one of equitable discretion, to the Court? What will the verdict of the jury, in a specific-performance suit, cover and settle? Will it be any thing more than the verdict upon a feigned issue, sometimes sent to a jury in the old Chancery practice, to obtain the decision of a question of fact for the satisfaction of the Chancellor?

We do not find it necessary to determine this question now. The case at bar does not require its decision, as it does not present a conflict of opinion between the jury and Chancellor on the manner of exercising discretion, nor as to whether the question belonged to one or the other; and we do not think the discretion was, in this particular case, erroneously exercised by either, or both, in holding that performance should be adjudged.

We proceed now to notice the controverted points in the case.

1. Of the contract and its part performance.

The evidence, which is upon the record, showed, it seems, to the satisfaction of the jury, and it shows to the satisfaction of this Court, so far as to forbid our reversing the action of the jury, that *John H. Watson*, an aged bachelor, of somewhat impaired health, living in *Terre Haute*, in this State, promised Dr. *William S. Mahan* and *Mary Mahan*, his wife, of the same place, that if they would occupy a certain house in the city, then owned by him, permit him and his nurse to live in it with them, board the two, and tend upon and take care of him so long as he lived, he would convey the house to Mrs. *Mary Mahan*. The doctor and his wife promised compliance, moved into the house, took *Watson* and his nurse in with them, boarded the two, gave medical and every other proper attention and care to *Watson* till his death, which occurred some eight or nine months after the occupancy of the

house commenced. During the time, *Mahan* put improvements, costing 200 dollars, upon the house. The property was worth about 3000 dollars.

It thus appears that there was a plain and explicit contract —one proper to be made and executed—and that it was wholly executed on one part, and partly on the other.

There is a conflict of authority as to whether payment of purchase-money alone is such part performance as will take a parol contract out of the statute of frauds; *Malius* v. *Brown*, 4 Comstock, 403, and see Fry on Specf. Perform., Am. Ed., p. 261, and notes; but there is no dispute but that possession, taken expressly under the contract, is such part performance, especially where it is followed by the making of valuable improvements by the possessor.

There is no pretence in the case of any fraud or undue influence in the execution of the contract, nor but that *Watson* was *compos mentis;* and it can not be denied that labor and service constitute a valuable consideration upon which performance of a contract may be compelled. *Brewer* v. *Thorpe*, 3 Ind. 262; *Atkinson* v. *Jackson*, 8 Ind. 31.

The fact that *Watson* had rooms in the house with *Mahan*, did not necessarily render the possession a mixed one; and the jury found that *Mahan's* possession was exclusive; that *Watson's* was simply the occupancy of a boarder and lodger; and, we may add, by the very terms of the agreement between the parties, was to be under *Mahan*.

2. Of the consideration for the conveyance of the house.

The consideration was peculiar, and consisted of those things of which the value is difficult, in some respects, to measure. Besides the medical attendance and ordinary boarding for which definite compensation might be fixed, there were two or three items which were extremely difficult to value, even for a specified period, and, in this case, the time was uncertain. Those were the domestic and social in-

convenience of having, as members of the household, *Watson* and his nurse—the former, according to the testimony, being any thing but agreeable in person and habits; and further, the inconvenience, trouble and labor of obeying, at any and all hours, his calls for personal attention on the part both of the doctor and Mrs. *Mahan,* and the consequent unpleasant personal association, especially as to Mrs. *Mahan.* Who can say for what price, where there was ample ability to pay, they would be willing to enter upon the like undertaking?

We can not say that the consideration was inadequate.

3. Of compensation in damages.

And for the reasons above given touching the consideration, it is easy to say that compensation in damages for failure to convey would be difficult to assess. See Lead. Cases in Eq., Vol. I., top p. 571; also, 8 Blackf. Rep., on p. 250. But aside from this, in cases of the sale of real estate where the contract is clear, is a fair one, and out of the statute of frauds, it is almost a matter of course to decree specific performance. See Lead. Cases in Eq., Vol. I., p. 577.

4. Of the rulings below upon evidence.

The Court refused to hear evidence as to the annual rental value of the house.

Also, of the value of the *Mahans'* services in taking care of *Watson* during the time he was at their house.

From what has been said, it follows that testimony upon these points was unimportant. The contract was a special one for the conveyance of the house for the consideration named. It is not sought to impeach the contract for fraud, mistake, incompetency, &c. The value of the house—the thing to be conveyed, the subject-matter of the contract— was proved, and the performance of all that was required as the consideration for its conveyance. In such a state of the case, the evidence offered was irrelevant. *Watson* wanted to be well taken care of—was able to supply by money what af-

fection might bestow without, and was competent to set the price he would pay. His property was his own. The house was not conveyed by *Watson.* He died testate as to all his property, and this suit was instituted against the devisees to obtain a conveyance.

The Court allowed the plaintiffs to give the will in evidence for the special purpose of showing who the devisees were, and for no other. We see no error in this.

Another point. One of the devisees was executor of *Watson's* will, and was a defendant to the suit as such. We do not see that he had any interest in the case as executor, and was not, therefore, a necessary party to the suit, in that capacity.

*Per Curiam.*—The judgment below is affirmed, with costs.

*B. B. Moffatt* and *J. A. Matson,* for the appellants

*Smith & Mack,* for the appellees.

