MASSELL REALTY CO. *et al. v.* HANBURY, admx., *et al.*

1. A contract for the sale of real estate, between two owners thereof and a purchaser, which specifies the gross purchase-price to be paid, and further recites that the purchaser agrees to "assume loan of $900.00

Appeal and Error, 4 C. J. p. 651, n. 42; p. 770, n. 46; p. 976, n. 91. Contracts, 13 C. J. p. 797, n. 48.

Evidence, 22 C. J. p. 207, n. 51; p. 240, n. 95, 96, 97; p. 241, n. 4, 8; p. 243, n. 50; p. 251, n. 74; p. 824, n. 10.

Frauds, Statute of, 27 C. J. p. 163, n. 74; p. 164, n. 99, 1; p. 278, n. 75; p. 292, n. 59.

Specific Performance, 36 Cyc. p. 701, n. 96; p. 765, n. 87; p. 773, n. 52; p. 784, n. 15 New.

Trial, 38 Cyc. p. 1335, n. 37.

now outstanding against" the property purchased, "which loan bears eight per cent. interest, which matures in about eighteen months and can be taken up at any time prior to maturity by paying interest to date," and in which the purchaser is to give two notes for the balance of the purchase-price, to mature on or before twelve months, and to pay seven per cent. interest, is not void under the statute of frauds for lack of sufficient description of the loan which the purchaser assumes and the notes which he is to give for the balance of the purchase-money after deducting such loan.

(a) The loan assumed by the purchaser is one outstanding against the property at the date of the contract of purchase, and this furnishes a key by which the loan may be ascertained without resort to parol evidence.

(b) A promise by the purchaser of lands, which are subject to a mortgage or other incumbrance, to assume and pay off the same as part of the consideration, is not required to be in writing under the statute of frauds, as between the seller and purchaser.

2. When an offer by a corporation to purchase real estate is signed in its name by another, and in the offer there is a provision that notes to be given by it for deferred payments of the purchase-money are to be indorsed by the person executing such offer for and in the name of the corporation, which offer is accepted by the sellers, the offer and acceptance constitute an agreement under which the corporation is to give notes for the deferred payments of purchase-money, indorsed by the person signing said offer for and in the name of the corporation, and furnish written evidence of the agreement of such person to indorse such notes, which sufficiently complies with the requirements of the statute of frauds that such an agreement must be in writing; it not being required by the statute that the memorandum of the agreement should be signed by the person sought to be charged, but the requirement of the statute is met when such memorandum is signed by some one lawfully authorized to do so by the person sought to be charged.

3. The description of the realty set out in the deed which plaintiffs tendered to the purchaser before bringing this suit for specific performance does not contain a description substantially different from that set out in the contract of sale.

4. The court did not err in overruling the demurrer to the petition, and in refusing to grant a new trial.

5. Where a suit was instituted by two owners of real estate against a purchaser thereof from them, for specific performance of the contract of sale, and pending the action one of the sellers died and his administratrix was made a party plaintiff in his stead, the trial judge properly overruled an oral motion to dismiss the action because the heirs at law of the deceased plaintiff were not made parties.

6. Where plaintiffs in an action for specific performance claimed title to the real estate therein involved, under a sheriff's deed, and where the execution under which said sale was effected was not recorded with the sheriff's deed to the purchaser at such sale, and where the record of the suit in which the judgment was obtained upon which such execution issued was lost, the plaintiffs, without producing such execution, or

without showing its recordation, established title in the. purchaser at such sheriff's sale by the introduction of exemplifications of the records of the court, which showed the rendition of a verdict in favor of the plaintiff against the defendants in such execution, the date and amounts of the judgment, the issuing of an execution on this judgment by the clerk and its entry on the execution docket of the court, the delivery of the execution to the sheriff, its entry upon the execution docket kept by the sheriff, the levy by that officer of this execution upon a described tract of land, excepting a graveyard reserved thereon, the tract so levied on embracing the property involved in this case, the advertisement and sale of this land under the levy, and that the person under whom plaintiffs claim purchased the same at such sale and paid the purchase-price thereof to the sheriff; and by further proof that the graveyard referred to in such levy and excepted therefrom was not located upon the property involved in this suit.

7. The court did not err in admitting in evidence, over the objection of the defendants that the same were irrelevant and hearsay, the above exemplifications from the records of the court in which the execution issued under which the sheriff's sale was effected.

8. Pedigree, including descent, relationship, birth, marriage, and death may be proved by the declarations of deceased persons related by blood or marriage.

(a) Where proof of the pedigree of plaintiffs, their parents, and the heirs at law of the latter, was essential to enable the plaintiffs to recover, and an affidavit of a person since deceased, related by blood to such parties, contained declarations establishing such pedigree, such affidavit was admissible to prove such pedigree, and was not objectionable on the ground that the declarations were hearsay and not binding on the defendants.

(b) Where such affidavit contained declarations tending to establish such pedigree, and contained other statements which were inadmissible if properly objected to, and where the admissibility of such affidavit was objected to as a whole, upon the ground that it was hearsay and not binding upon the defendants, its admission over such objection is not ground for a new trial.

(c) Besides, when the objectionable statements in the affidavit were proved by other competent evidence which was undisputed, the admission of the affidavit containing such objectionable statements was harmless.

9. An exception to a refusal of the court to grant a nonsuit will not be considered by this court, where the defendants made a motion for new trial, one ground of which complains that the verdict is contrary to the evidence.

10. The court did not err in instructing the jury that the papers between the sellers and the purchaser, and evidencing the contract which the plaintiffs sought to have specifically performed, constituted a legal and binding contract for the sale of this property and for the indorsement of the notes by Ben J. Massell.

11. The court did not err in giving to the jury the instructions of which the defendants complain in the fifth ground of the motion for new trial.

No. 5945.  NOVEMBER 16, 1927.  REHEARING DENIED FEBRUARY 20, 1928.

Equitable petition. Before Judge Humphries. Fulton superior court. February 12, 1927.

Thomas P. Hanbury and Mrs. Leila G. Collings filed a petition against Massell Realty Company and Ben J. Massell, for specific performance of a contract as follows:

"Atlanta, Ga. Sept. 13th, 1923.

"$100.00. Received of Massell Realty Company one hundred and no/100 dollars as part purchase-money on the following described property: Improved property in the City of Atlanta, Ga., being a residence on lot 59 x 190 feet, more or less, and known as # 667 Whitehall St., which we have this day sold to the purchaser above named, subject to approval of owner or his agent, and title being good, or made good within a reasonable time, for the sum of ten thousand and no/100 ($10,000.00) dollars to be paid as follows: $2,000.00 cash on or before Nov. 1, 1923; assume loan of approximately $900.00 now outstanding against said property, which loan bears eight per cent. interest, matures in about eighteen months, and can be taken up at any time prior to maturity by paying interest to date; balance to be paid in two notes maturing on or before twelve months, bearing seven per cent. interest. Taxes to be paid as fixed by law. Rents and insurance to be prorated to date sale is closed. House on premises not to be wrecked until $2,000.00 is paid. The above-mentioned note to be indorsed by Ben. J. Massell. [Signed] Burdett Realty Company, Agents, per A. C. Burdett.

"I hereby agree to purchase the above described property on terms and conditions above named. [Signed] Massell Realty Co., by Ben J. Massell, Purchaser.

"I hereby approve of the above-mentioned sale on the terms and conditions named, and agree to pay Burdett Realty Company, Agents, on the date formal transfer is made, a commission of regular dollars. [Signed] T. P. Hanbury, Mrs. Leila G. Collings."

On November 9, 1923, the time of performance of the contract was extended upon the following application:

"Atlanta, Ga. November 9th, 1923.

"Mr. T. P. Hanbury, 60 Gordon St., City.

"Dear Sir: With reference to the contract dated September 13th, 1923, of Massell Realty Company to purchase from yourself and Mrs. Leila G. Collings improved property known as # 667

Whitehall Street, for a consideration of $10,000.00, we hereby request you to grant us an extension of sixty days or until January 1st, 1924, in which to consummate such contract according to the terms and conditions stipulated therein. In the event this extension of time is granted we will adjust interest on the purchase-price as of November 1st, 1923, and assume payment of taxes for the year 1924; it being understood that we are to receive such rents as may be collected on said property after November 1st, 1923. It is further understood that the contract to purchase as above specified remains in full force and effect according to the terms and conditions specified therein.

"Yours very truly, Massell Realty Company, By Ben J. Massell."

The time of performance of the contract was again postponed upon the following request:

"Mr. T. P. Hanbury, 60 Gordon St., City.

"Dear Sir: In consideration of further extension of time, we hereby agree to consummate on or before July 15, 1924, and formally close the deal for purchase of property known as # 667 Whitehall street pursuant to contract dated Sept. 13th, 1923, and subsequent agreement of November 9, 1923, between the undersigned as purchasers and T. P. Hanbury and Mrs. Leila G. Collins, as owners.

"Very truly yours, Massell Realty Company, by Ben J. Massell, President."

In July, 1924, petitioners tendered to defendants a deed to the property, and demanded that they perform the contract, but they failed and continued to fail to perform. Petitioners alleged their ability and willingness to comply with the contract, and offered to make to Massell Realty Company a good and sufficient title to the property, subject to the $900 loan assumed by it. Attached to the petition was a copy of the deed tendered to the defendants; and plaintiffs offered to make any other proper deed to the property that the company might prepare.

The defendants demurred generally and specially to the petition. The grounds of general demurrer are, (a) that the petition sets out no cause of action, and (b) that the contract attached to said petition is too vague, uncertain, and indefinite to constitute a contract legally enforceable. Ben J. Massell demurred specially to the allegation that he made the contract, upon the grounds, (a) that

it is a conclusion of the pleader; and (b) that the contract is unilateral, and is too vague, uncertain, and indefinite to constitute a contract legally enforceable; and to the purported description of the loan on the property, because it is not a true description of such stipulation as it appears from the contract. The defendants demurred specially to the allegation that the contract was made by Massell Realty Company "by and with the consent of the said Ben J. Massell," as irrelevant and as a conclusion of the pleader; and to the allegation of description, for the reason that the deed referred to contains a materially different description of the property from that specified in the contract. The demurrers were overruled, and the defendants excepted pendente lite and assigned error. The plaintiffs amended by alleging that the contract provided for two notes for the balance of the purchase-price, because there were two vendors.

On March 5, 1926, the death of T. P. Hanbury was suggested of record, and on March 15, 1926, Carrie C. Hanbury as his administratrix was, upon motion, made a party plaintiff. The defendants moved to dismiss the action, upon the ground that the heirs at law of the decedent should be made parties before the cause could proceed. The court overruled this motion, and exceptions pendente lite were taken, on which error was assigned. The defendants in their answer admitted the execution by Massell Realty Co. of the contract which plaintiffs seek to have specifically performed, but they denied that Ben J. Massell individually entered into any contract with them. They alleged that the extension agreements of November 9, 1923, and June 17, 1924, were not in their possession, and so they were unable to admit or deny the allegations touching them. They set up that one of the deeds in plaintiffs' chain of title was a sheriff's deed to Mary E. Ozburn, that no fi. fa. was attached to or recorded with the deed, that it was insufficient to convey a title to Mary E. Ozburn, and that the property involved is a portion of the property purporting to be conveyed by said deed; that there are in plaintiffs' chain of title six deeds which purport to convey property of which the property involved is a portion, but in each of said deeds there is a reservation of a graveyard containing approximately one eighth of an acre, and it is impossible for defendants to ascertain whether or not said graveyard or any portion thereof lies within the boundaries

of the lot mentioned in the contract; that in 1886, by a deed recorded in book B-3, page 491, there was conveyed to Rosa A. Hanbury a life-estate in said property, and so far as defendants know said life-estate has not terminated; that said contract describes said lot as being fifty-nine by one hundred and ninety feet, whereas it is not of said dimensions, as shown by the deed attached to the petition as having been tendered; and that these defects in plaintiffs' title were called to their attention, and they have not been cured or corrected.

The defendants tendered an amendment to their answer, striking the allegation admitting the execution of the contract, and alleged that the Massell Realty Company executed a paper similar in all respects to that referred to in the petition, except that the contract so executed did not, at the time of its execution, provide that the balance of the purchase-money should be evidenced by two notes, and except that said paper did not contain the provision, "house on premises not to be wrecked until $2,000.00 is paid." They set up that said changes were material, and were made by plaintiffs after the execution thereof; that Ben J. Massell, who signed the original paper and acted in the matter for the company, did not consent to said changes, and did not know that they had been made on or before June 17, 1924.

The evidence authorized a finding of the following facts: At the time the Massell Realty Company signed its proposal, constituting a part of the contract, it contained the stipulation that the balance of the purchase-money was to be evidenced by one note, and did not contain the words, "house on premises not to be wrecked until $2,000.00 is paid." The instrument as thus changed and executed was returned to Ben J. Massell, and a copy thereof was kept in the office of the company, and was produced by it and introduced on the trial by the plaintiffs. The title to the property was examined by an attorney for Massell Realty Company, and on April 7, 1924, he made a report to it of the condition of the title. In this report the attorney stated that he found the following objections to the title: (1) That in six of the back deeds conveying the land of which the property involved is a part, an old graveyard was reserved, and that proof should be made that this graveyard was not located on the property involved. (2) That in the chain of title is a sheriff's deed, and that the fi. fa. is

not of record. (3) That Rosa A. Hanbury acquired title to the property in 1886, that the plaintiffs claim as her heirs at law and through other of her heirs at law, that Rosa A. Hanbury had a life-estate in this land, and there is nothing in the record to show her death, and that clear proof should be offered that she is dead and that the plaintiffs own a full interest in fee simple. (4) That there was a loan deed on the property in favor of Isabel A. Levy, to secure $900. (5) That the taxes for 1924 were a lien upon the property.

The facts touching the title were as follows: James R. D. Ozburn owned a tract of land of which the property involved was a part. On April 8, 1867, John C. Franklin obtained a judgment in Fulton superior court against J. R. D. Ozburn as principal, and Matthew Ozburn as indorser. The execution issued on this judgment was levied on this land, and it was sold on October 4, 1870, under said levy, to Mary E. Ozburn. In 1886 Mary E. Ozburn sold and conveyed to Rosa A. Hanbury the property involved in this suit, and constituting a part of the property embraced in said sheriff's deed. Rosa A. Hanbury died intestate on January 15, 1892. Her heirs at law were her husband, T. E. Hanbury, and her children, Thomas P., Leila G., and Mary L. Hanbury. Thomas E. Hanbury died on May 30, 1912. Rosa A. Hanbury was in possession of this property from 1886 until the time of her death. Thomas P. Hanbury and Leila G. Hanbury conveyed to T. E. Hanbury, on September 26, 1894, an undivided half interest in this property for his life. On July 3, 1896, Mary Lee Hanbury conveyed to T. E. Hanbury an undivided fourth interest in this property in fee. On July 4, 1896, T. E. Hanbury conveyed this property to T. P. Hanbury and Leila G. Hanbury (now Collings), reserving to himself a life-estate therein. The deed which plaintiffs tendered to defendants before bringing this suit described the property as follows: "All that tract or parcel of land lying and being in the City of Atlanta, part of land lot 108 (108) in the fourteenth (14th) district of Fulton County, Ga., and being a part of the northeast part of lot No. 37, in the survey of the old Whitehall property made by Kennery, more particularly described as follows: Commencing on the east line of formerly Sage's property at a point two hundred and seventy-two (272) feet south of Oak, formerly Amos Street, and running thence east parallel with

Oak Street one hundred and ninety-eight (198) feet to the west side of Whitehall, formerly West Peters Street, thence south along the west side of Whitehall Street fifty-nine and one fourth (59-1/4) feet, thence west parallel with Oak Street one hundred and seventy-nine (179) feet, and thence north fifty-seven and one fourth (57-1/4) feet to the place of beginning, the house thereon being known as No. 667 Whitehall Street."

The court records in the case in which John C. Franklin obtained judgment against J. R. D. Ozburn as principal, and Matthew Ozburn as indorser, could not be found after due search. The execution issued on the judgment in that case was not introduced. Plaintiffs introduced an exemplification from minutes of Fulton superior court, April term, 1867, which contained a statement of said case, and the verdict in favor of the plaintiff for $474.23, besides interest and costs. Also, an exemplification from execution docket B of said court, containing an entry of the execution in said case. The execution was numbered 1908, October term, 1867, with the names of the attorneys for the plaintiff, a statement of the case, and a recital that the judgment was rendered on April 8, 1867, with the amounts of principal, interest, costs of the clerk, costs of the sheriff, and fifty-cent stamp, and a recital that execution issued May 24, 1867, and was handed to the sheriff on February 26, 1868. It contained the receipt of the clerk for all costs, dated February 28, 1870, and a recital that the fi. fa. was in the hands of S. B. Hoyt, assignee. Plaintiffs introduced an exemplification from the sheriff's docket of Fulton County, which contained a statement of said case, with the names of the attorneys for the plaintiff, the number of the execution, the parties, the amount of principal, interest, and costs due the respective officers, the jury fee of $3, and fifty-cent stamp. This entry contained a statement that the plaintiff had paid the costs, amounting to $14. It also contained a written transfer to S. B. Hoyt, without recourse, dated January 31, 1870, signed by the plaintiff, a receipt by the clerk of S. B. Hoyt, of $13 costs on this fi. fa., dated February 28, 1870, and an entry of levy of the fi. fa. upon a described tract of land, with the exception of what had been reserved as a graveyard, as the property of James R. D. Ozburn, one of the defendants, dated September 3, 1870. The property levied on embraced the property embraced in this case. This entry recited

that the property was sold on October 4, 1870, for $100, to Mary
E. Ozburn, that the fund arising from the sale had been applied
to an older fi. fa., and that the fi. fa. had been handed to S. B.
Hoyt on October 15, 1870.

Plaintiffs introduced in evidence an affidavit made by T. P.
Hanbury, in which he deposed that he and Leila G. Collings were
children of T. E. Hanbury and Mrs. Rosa A. Hanbury; that Rosa
A. Hanbury died intestate on January 15, 1892; that her only
heirs at law were her husband, T. E. Hanbury, and her children,
Thomas P., Leila G., and Mary L. Hanbury, who acquired the
property involved in this case by inheritance from Rosa A. Han-
bury; that there was no administration on the estate of Rosa A.
Hanbury, and she owed no debts; that Mary L. Hanbury con-
veyed her interest in said property to T. E. Hanbury on July 3,
1896, by deed recorded in book 120, page 26; that T. E. Hanbury
conveyed his interest to Thomas P. Hanbury and Leila G. Collings,
by deed dated July 4, 1896, recorded in deed book 120, page 340,
reserving a life-interest; that T. E. Hanbury died on May 30,
1912; that the old graveyard reserved in some of the ancient con-
veyances of the larger tract of which this property is a part, and
mentioned in the report of the attorney for Massell Realty Com-
pany, April 7, 1924, did not include any part of the property in-
volved in this case; that said graveyard was on the property
situated west of the property of Hanbury and Collings, on another
lot; that Rosa A. Hanbury had actual, adverse possession of said
property from 1885 until her death on January 15, 1892; that her
heirs above named had such possession of it from January 15,
1892, to July 3, 1896, when Mary L. Hanbury deeded her in-
terest to T. E. Hanbury; that then T. E. Hanbury, T. P. Hanbury,
and Leila G. Collings had possession from July 3, 1896, to May
30, 1912, when T. E. Hanbury died; that since May 30, 1912,
Thomas P. Hanbury and Leila G. Collings have had actual, con-
tinuous, adverse possession up to the present date; that Thomas
P. Hanbury and Leila G. Collings are over twenty-one years old;
that Mary L. Hanbury was over twenty-one years of age when she
conveyed her interest to her father; that the loan deed to Isabel
A. Levy is to be assumed by Massell Realty Company, according
to the terms of this contract, and the same is true as to 1924 taxes.

The jury returned a verdict for the plaintiffs. The defendants

moved for a new trial, upon grounds which sufficiently appear from the foregoing statement and the opinion. The court overruled the motion for new trial, and the defendants excepted.

*Jones, Evins, Moore & Powers,* for plaintiffs in error.

*Mitchell & Mitchell* and *Edgar A. Neely,* contra.

HINES, J. (After stating the foregoing facts.)

1. The first question for our decision is whether or not the contract of sale is sufficiently certain and definite as to be capable of being enforced by decree for specific performance. Under our statute of frauds, all contracts for the sale of land or any interest therein must be in writing, signed by the party to be charged therewith, or some person by him lawfully authorized. Civil Code (1910), § 3222, par. 4. Every essential element of a sale must be expressed in writing to meet the requirements of the statute. *Tippins* v. *Phillips,* 123 *Ga.* 415, 417 (51 S. E. 410). In other words, all the essential terms of a contract of sale must be embodied in the writing. The writing in this case embodies the name of the purchaser and the names of the sellers. It sufficiently describes the land bought. It states the gross purchase-price to be paid, which is $10,000. Of this sum $2,000 was to be paid in cash on or before November 1, 1923. No question is made as to the sufficiency of the statement of these terms in the writing. The purchaser agrees to "assume loan of approximately $900.00 now outstanding against said property, which loan bears eight per cent. interest, matures in about eighteen months, and can be taken up at any time prior to maturity by paying interest to date;" and to give two notes for the balance of the purchase-price, maturing on or before twelve months, and bearing seven per cent. interest. It is insisted that the terms of the writing, touching the loan to be assumed by the purchaser, and the two notes to be given by the purchaser for the balance of the purchase-price, are so vague, uncertain, and indefinite as not to comply with the statute of frauds. Does the writing sufficiently describe the loan to be assumed by the purchaser? The contract describes the loan to be assumed by the purchaser as one outstanding against the property at the date of the contract, and of the approximate amount of $900, bearing eight per cent. interest from date, maturing in about eighteen months, which could be retired before maturity by paying interest to date of its retirement. The description of the

amount of the loan and the date of its maturity is indefinite. The exact amount of the loan and the exact date of its maturity are not stated. But the loan assumed is one outstanding against the property. To be outstanding against the property it must be one in writing, and secured by mortgage, deed, or other instrument. The writing evidencing the loan and the instrument securing it would furnish an accurate description of the loan assumed by the purchaser. The contract thus furnishes a means or key by which the description of the loan may be made certain and definite. The loan assumed by the purchaser can thus be made certain without resort to parol evidence. This court has held that the maxim, id certum est quod certum reddi potest, applies to the description of land in a deed. *Swint* v. *Swint,* 147 *Ga.* 467 (94 S. E. 571). It follows that this maxim is equally applicable in contracts for the sale of land. So as the mortgage, the payment of which is assumed by the purchaser, is one outstanding against the property, the exact amount thereof can be ascertained either by an inspection of the instrument or from its record.

In *Trust Company of Georgia* v. *Neal,* 161 *Ga.* 965 (132 S. E. 385), which is relied upon by the plaintiffs in error, the language in the contract of purchase, "assumption of loan $9500.00," was held by the majority of the court to be too indefinite to identify any particular loan, and for this reason it was held the writing did not meet the requirements of the statute of frauds, for which reason it was void. The Chief Justice and the writer dissented. The instant case, however, does not fall within the ruling announced in that case. The loan assumed in this case was one of approximately $900, and was one outstanding against the property purchased at the date of the purchase. Furthermore, the loan was described as bearing interest at eight per cent., and was one which could be taken up at any time prior to maturity by paying interest to date. Being a loan outstanding against the property, it necessarily was an encumbrance then upon the property, the exact amount and the exact date of maturity of which could be easily ascertained from the instrument itself which created the encumbrance upon the property sold, or from its record. So the case at bar does not come within the ruling made by the majority in the case cited. Furthermore, a promise by the purchaser of lands that are subject to a mortgage or other encumbrance, to

35

assume and pay off the same as a part of the consideration or price, is not required to be in writing, because it is not a promise to pay the debt of another, but it is a promise to pay to a third party a debt which the purchaser owes to the seller. The fact that in thus paying his own debt the purchaser incidentally discharges a debt of his grantor does not bring the promise within the statute of frauds. 20 Cyc. 174, C-2; *Ford* v. *Finney,* 35 *Ga.* 258; *Martin* v. *Copeland,* 77 *Ga.* 374 (3 S. E. 256); *Cowart* v. *Singletary,* 140 *Ga.* 435 (4) (79 S. E. 196, 47 L. R. A. (N. S.) 621, Ann. Cas. 1915A, 1116); Herrin *v.* Abbe, 55 Fla. 769 (46 So. 183, 18 L. R. A. (N. S.) 907); Tuttle *v.* Armstead, 53 Conn. 175 (22 Atl. 677); 29 Am. & Eng. Enc. Law (2d ed.), 916, note 1; 27 C. J. 163 (§ 56), 3, and cases cited in note 74.

As the promise of a purchaser of land to pay from the purchase-price a debt of the seller represented by a mortgage thereon is not one required to be in writing under the statute of frauds, such promise or undertaking can be proved either by parol or writing; and where the parties do undertake to reduce the terms of the promise to writing, any ambiguity or indefiniteness therein can be explained by oral proof, if such proof does not vary or contradict the terms of the writing. The above principle, which has been recognized by the decisions of this court and by numerous decisions in other jurisdictions, was not considered in *Trust Co.* v. *Neal,* supra. So we are of the opinion that the contract of sale was not void because it did not meet the requirements of the statute of frauds in describing the mortgage which the purchaser assumed and undertook to pay from the purchase-money of the land bargained for.

Furthermore, the contract of purchase was not void because of insufficient description of the two notes which the purchaser was to give. The purchaser was to pay for this property $10,000. Of this amount $2,000 was to be paid in cash on or before November 1, 1923. The purchaser was to pay the outstanding loan of approximately $900 on the property, with the interest due thereon, and then was to give two notes to the sellers for the balance of the purchase-money, to mature on or before twelve months, with seven per cent. interest. There were two joint sellers, who each owned an undivided half interest in the land sold. They were jointly and equally entitled to this balance of purchase-money.

This being so, the evident purpose of giving two notes was to have the amount of the balance of the purchase-money going to each seller represented thereby. Whatever balance of purchase-money was due to the sellers, after deducting the cash payment and the loan upon the property, would be payable in equal amounts to the two sellers, if the loan on the property was their joint loan. If this loan was that of one of the sellers, then one of the notes should be for an amount equal to one half of the balance less the loan, or $3100, and the other note should be for $4900. Evidently the requirement of two notes was for the convenience of the sellers in dividing such sum, so as to give to each the amount of balance going to him or her. So we do not think that the portion of the contract relating to these notes was so vague and uncertain as to render the contract void under the statute of frauds. This case differs from *Crawford* v. *Williford*, 145 *Ga.* 550 (89 S. E. 488), in which the seller agreed to sell on terms of one half cash, the balance to be paid in one to four years with interest at seven per cent. In the case cited a majority of the court held that the amounts of the notes to be given and the dates upon which they were to be paid were left uncertain, and thus did not meet the requirements of the statute of frauds; and for this reason the contract of sale was not enforceable.

2. The contract of sale provides that the notes to be given for the balance of the purchase-money as above were to be indorsed by Ben J. Massell. It is urged by his counsel that he is not individually bound by this contract, for the reason that he did not execute the contract in his individual capacity. The original contract was signed, "Massell Realty Co., by Ben J. Massell, Purchaser." Undoubtedly the contract of purchase was the individual contract of the company. In the proposal of the company to purchase this property it offered to do so upon the terms therein named, including the proposition to have the notes given for the deferred payments of the purchase-money indorsed by Ben J. Massell. When the offer was accepted by the owners, the offer and acceptance constituted an agreement between the purchaser and the sellers, by which the former was to give notes for the deferred payments, indorsed by Massell. If the offer made by the company through Massell contained a stipulation that he would sign these notes, then when the offer was accepted by the sellers

the two papers created an agreement between the sellers and Massell, by which the latter was to indorse these notes, if such agreement meets the requirements of the statute of frauds. On behalf of his company Massell made an offer to the owners that his company would buy this property upon certain terms, including the stipulation that he was to indorse the notes of his company given for the deferred payments. Properly construed, this was clearly an agreement upon his part to indorse these notes. It is not to be assumed that he would present to the owners an offer executed on behalf of his company by himself, and that the company would give for the deferred payments notes indorsed by him, when he did not intend and did not agree to indorse them. On the contrary the proper construction of this instrument is that Massell agreed to indorse these notes for his company. Is such agreement on his part obnoxious to the statute of frauds? An agreement to indorse the notes of another, given in payment of the latter's debt to a third person, must comply with the requirements of the statute of frauds. Civil Code (1910), § 3222, par. 2; 27 C. J. 164 (§ 61), 2. These are met when the writing is signed by the party to be charged therewith, or some person by him lawfully authorized. Necessarily the offer to purchase in this case was made by the company with the consent and authority of Massell. When he affixed the signature of the company to the writing, he will not be heard to say that it was done without his authority. So in effect he authorized the company to make an offer containing a stipulation that he would sign the company's notes for the deferred payments on this land. It follows that his promise to indorse these notes is shown by a writing the execution of which he personally effected. When this promise to indorse can thus be shown by a writing which he executed on behalf of his company, the case is not obnoxious to the statute of frauds. All that the statute of frauds requires is written evidence of the agreement. The memorandum may even consist of entries made by the party to be charged on his or his agent's books. So entries in the records of a corporation may prove a contract by it. Clark on Contracts, 83; *Borum* v. *Swift,* 125 *Ga.* 198, 202 (53 S. E. 608). Massell necessarily assented to the terms and stipulations embraced in this offer. So we are of the opinion that the case does not fall within the statute of frauds.

3. It is insisted by the defendants that the deed executed by the plaintiffs and tendered to the Massell Realty Company contains a description different from that set out in the contract of sale. The description in the contract of sale is as follows: "Improved property in the City of Atlanta, Ga., being a residence on lot 59 x 190 feet, more or less, and known as # 667 Whitehall St." The description in the deed is substantially as follows: All that tract of land, lying in the City of Atlanta, part of land lot 108 in the 14th district of Fulton County, Georgia, and being a part of the northeast part of land lot 37 in the survey of the old Whitehall property made by Kennery, and more particularly described as follows: Commencing on the east line of formerly Sage's property at a point 272 feet south of Oak Street, and running thence east parallel with Oak Street 198 feet to the west side of Whitehall Street, thence south along the west side of Whitehall Street 59-1/2 feet, thence west parallel with Oak Street 179 feet, thence north 57-1/2 feet to the place of beginning, the house thereon being known as # 667 Whitehall Street. It will thus be seen that there is no substantial variance between the description of the land sold in the contract of sale and in the deed proffered by the plaintiffs to the defendants before the institution of this suit. The description in the deed is more complete than that in the contract of sale, but not substantially different from that embraced in the contract. The mere fact that the description in the contract of sale would seem to indicate that the lot was a parallelogram, and that the description in the deed giving the dimensions of the lot shows that the lot is not a parallelogram, does not render the variance fatal. Both in the contract of sale and in the deed the property sold is described as a residence and lot known as # 667 Whitehall Street. The dimensions of the lot in the contract are given as more or less. In the contract of sale the property is described as a residence and lot "known as # 667 Whitehall St." When the purchaser gets this residence and lot, it gets what it purchased. If the actual dimensions of the lot sold, which is so described, are somewhat different from its actual dimensions, its dimensions in the contract of sale may be rejected as surplusage, under the maxim falsa demonstratio non nocet. *Johnson* v. *McKay,* 119 *Ga.* 196 (45 S. E. 992, 100 Am. St. R. 166).

4. Under the foregoing rulings, it follows that the court did not err in overruling the demurrer to the petition.

5.    Pending the suit one of the plaintiffs died, and his administratrix was made a party in his stead.    The defendants assign error upon the overruling of a motion to dismiss the cause because the heirs at law of the vendor were not made parties to the suit.    This suit was brought by the vendors for specific performance of a contract for the sale of land, and to recover from the vendee the amount of the purchase-money.    Could the suit proceed in the name of the surviving vendor, and in the name of the administratrix of the deceased vendor, without making the heirs of the latter parties to the suit?    In jurisdictions where lands descend to the heirs upon the death of their ancestors, a bill for specific performance of a contract of sale will not lie, at the instance of the vendee, against the personal representative of the deceased vendor, without making the heirs of the vendor parties to the suit.    Porter *v.* Worthington, 14 Ala. 584; Hale *v.* Darter, 24 Tenn. 78; Roberts *v.* Marchant, 1 Hare, 547; Hamilton *v.* Walker, 12 Grant's Ch. (U. C.), 172; Gallatin Land &c. Co. *v.* Davis, 44 W. Va. 109 (28 S. E. 747); Morgan *v.* Morgan, 2 Wheat. (15 U. S.), 290 (4 L. ed. 242); Duncan *v.* Wickliffe, 5 Ill. 452; Miller *v.* Henderson, 10 N. J. Eq. 320; 36 Cyc. 766, 2-b (I).    So devisees of land involved are necessary parties defendant.    Craig *v.* Johnson, 3 J. J. Marsh. (Ky.) 572; Newark Sav. Inst. *v.* Jones, 35 N. J. Eq. 406; 36 Cyc. 766, 2-b (II).    The personal representative of a deceased vendor is a necessary party, as the decree would require the payment of the purchase-money to him.    Coles *v.* Feeny, 52 N. J. Eq. 493 (29 Atl. 172).    Usually the personal representatives of the vendor are not necessary parties, where, from full performance by the vendee before he brings suit, they have no interest in the case.    Watson *v.* Mahan, 20 Ind. 223; McCabe *v.* Healy, 138 Cal. 81 (70 Pac. 1008).    The administrator, however, is a proper party defendant, since the property in question might be needed to pay decedent's debts.    Colfax *v.* Colfax, 32 N. J. Eq. 206.

Where the contract of the vendor, which it is sought to enforce, is to devise the whole estate, the executor is a necessary party.    Kempton *v.* Bartine, 59 N. J. Eq. 149 (44 Atl. 461).    The heirs also are proper parties where the question may arise whether the land passed by devise.    Hubbard *v.* Johnson, 77 Me. 139.    Heirs and devisees are necessary parties where the land of the deceased

vendor descends to his heirs at law or devisees, for the reason that the administrator has no title which he can convey to the purchaser. Generally the heirs of a vendor must be joined in a suit brought by the personal representative against the vendee for specific performance, since the decree divests them of the legal title which vested in them on the death of their ancestor. Hays *v.* Hall, 4 Porter (Ala.), 374 (30 Am. D. 530); Mitchell *v.* Shell, 49 Miss. 118; Collins *v.* Leary, 74 N. J. Eq. 852 (71 Atl. 603); Coles *v.* Feeney, supra; Muldrow *v.* Muldrow, 32 Ky. 387; McQuitty *v.* Wilhite, 218 Mo. 586 (117 S. W. 730, 131 Am. St. R. 561); 36 Cyc. 765, 2-E, e. (I). On the death of the vendor, since his interest is regarded in equity as personalty, it passes to his personal representatives, and they may sue to enforce it, and join the heirs or devisees for the purpose of compelling conveyance of the legal title from them to the vendee. Hurst *v.* Hensley, 7 Blackf. (Ind.) 373; Coles *v.* Feeney, supra; Miller *v.* Miller, 25 N. J. Eq. 354; Wheeler *v.* Crosby, 20 Hun (N. Y.), 140. It is incumbent upon heirs or devisees to whom the legal title to land passes upon the vendor's death, to convey to the vendee the right or title purchased by him, although they are not mentioned in the contract of sale. Miller *v.* Goodwin, 8 Gray (74 Mass.), 542; Brandon *v.* West, 28 Nev. 500 (83 Pac. 327); Hill *v.* Ressegieu, 17 Barb. (N. Y.) 162; Glaze *v.* Drayton, 1 Des. Eq. (S. C.) 109; Hibbert *v.* Aylott, 52 Tex. 530.

In a suit by the personal representative of a deceased vendor, for specific performance of a contract of sale, the heirs at law are necessary parties, not only to convey the legal estate upon payment by the purchaser, but because they have the right to have the alleged contract proved. Hamilton *v.* Walker, supra. In Roberts *v.* Marchant, 1 Ph. 373, Lord Lyndhurst said: "It was argued that by the contract the estate was converted into personalty, and that the heir at law had no interest in the matter. But that is to assume the very point in controversy; for the heir at law may dispute the contract and controvert its validity." But in the case at bar the suit was originally brought by the vendors, for specific performance of the contract by the vendee. The vendors set up the contract of sale, and alleged that they were able, ready, and willing to convey the property to the vendee upon the payment of the purchase-money. We have here a solemn admis-

sion in judicio by the vendors of the making of the contract. The heirs at law of the deceased vendor are bound by this admission. They can not dispute it. Therefore there is no necessity to make them parties in order to give them an opportunity to contest the existence of the contract. But it may be said that the title to an undivided half interest in the land involved passed to the heirs at law of the deceased vendor upon his death, and that they should be made parties so that they could be required by the final decree to convey the land to the purchaser upon the payment of the purchase-price. The suit having been instituted by their ancestor, and he having set up this contract in his petition and sought to have it specifically performed, his heirs are estopped by this admission in judicio from denying or contesting the contract. The contract of sale by the deceased vendor converted this realty into personalty, over which his personal representative has full control. Hays *v.* Hall, supra; Longwell *v.* Bentley, 23 Pa. St. 99; Griffith *v.* Stewart, 31 App. D. C. 29 (5). In such circumstances the purpose of the suit is to force the purchaser to pay the purchase-money; and the cause of action for its recovery vests in the personal representative of the deceased owner, and not in his heirs at law. *Bryant* v. *A. C. L. R. Co.,* 119 *Ga.* 607 (46 S. E. 829). Upon the payment of the purchase-money to the personal representative of the deceased vendor, we are of the opinion that the administrator, under authority conferred by the final decree in this case, can convey this property to the purchaser. So the court did not err in overruling the oral motion to dismiss the action because the heirs of the deceased vendor were not made parties.

6. It is insisted that the verdict is contrary to the evidence, because the plaintiffs failed to show a good title to the land in themselves. The purchaser set up certain alleged defects in the title. One is that in the chain of title is a sheriff's deed, and that the fi. fa. under which the sale was made was not recorded, nor was it introduced in evidence. This fi. fa. issued upon a judgment obtained in Fulton superior court by John C. Franklin against J. R. D. Ozburn, principal, and Matthew Ozburn, indorser. The record in this case could not be found after due search. The plaintiffs introduced in evidence an exemplification from minute book E, of Fulton superior court, April term, 1867, containing a statement of the case and the verdict in favor of the plaintiff; also

an exemplification from execution docket B of Fulton superior court, containing an entry of the execution in said case. This extract showed that the execution was numbered 1908, October, 1867. It contained the names of the attorneys for the plaintiff, a statement of the case, the amount of principal, interest, clerk's cost, sheriff's cost, and fifty-cent stamp. It recited that the judgment was obtained on April 8, 1867, that this fi. fa. issued on May 24, 1867, and that it was handed to the sheriff on February 26, 1868. It also contained a receipt by the clerk of the cost due on the fi. fa. on February 10, 1870. Plaintiffs introduced an exemplification from the sheriff's docket of Fulton County, page 163, showing an entry of said fi. fa. as number 108, Fulton superior court, October term, 1867. It contained a statement of the case, the date of the judgment, the items of principal, interest, clerk's costs, sheriff's costs, jury fee, and stamp; a recital that the plaintiff had paid the costs amounting to $14; an entry of transfer of this fi. fa. by the plaintiff to S. B. Hoyt on January 31, 1870; a receipt by the clerk to Hoyt for $13 for his costs on this fi. fa., dated February 28, 1870; an entry of levy of this fi. fa. upon a described tract of land known as the Griffin place, with the exception of a graveyard, as the property of James R. D. Ozburn, embracing the property in dispute, dated September 3, 1870, with a recital of sale of this land before the court-house door in the City of Atlanta, within the legal hours of sale, and of its purchase by Mary E. Ozburn as the highest bidder. This entry shows the appropriation of $13.25 of the purchase-money to the payment of the levy, advertising, sheriff's commissions for selling, and stamp, and gives the net proceeds of the sale after the payment of these expenses; and is dated October 4, 1870. This extract likewise contains another entry on the fi. fa., dated October 5, 1870, showing the application of the net proceeds of the sale of this property by the sheriff to another fi. fa. against Ozburn, of older date, and that this fi. fa. had been handed to S. B. Hoyt. All of the above entries were signed by the sheriff. The plaintiffs claim title under Mary E. Ozburn, by derivative conveyances.

These exemplifications show the rendition of a verdict in favor of a named plaintiff against named defendants, the date and amounts of the judgment, the issuing of an execution on this judgment by the clerk of that court, its entry on the execution

docket of that court, the delivery of the execution to the sheriff, its entry upon the execution docket kept by that officer, its levy upon a described tract of land, except a graveyard reserved, this tract embracing the property involved in this case, the advertisement and sale of this land under the levy, and that Mary E. Ozburn purchased the same at such sale and paid the purchase-price thereof to the sheriff. In these circumstances this proof was sufficient, without the production of the execution, to show title in Mary E. Ozburn, obtained under a sale regularly made by virtue of judicial process issuing from a court of competent jurisdiction. Such sale conveyed the title as effectually as if made by the person against whom the process issued, and the purchaser at such sale, or those claiming under her, are not required to show title deeds back of his purchase, unless necessary to show title in the person whose interest he purchased. Civil Code (1910), §§ 6051, 6052; *Sweeney* v. *Sweeney,* 119 *Ga.* 76, 78 (46 S. E. 76, 100 Am. St. R. 159). So the objection that the plaintiffs failed to show good title, because they did not produce the execution under the levy of which the sale was made at which Mary E. Ozburn obtained title, is not well taken.

The next objection to the validity of the title is that under a prior conveyance embracing the land involved, and forming a link in the chain of title of the plaintiffs, there was reserved a graveyard, and that there is no proof that this graveyard was not wholly or partially upon the land which plaintiffs sold to the defendant. There is in the record proof that this graveyard was not located on the land involved in this case, but on the contrary was located on an adjacent lot. Furthermore, it may be assumed that the slightest examination or inspection would disclose the fact that there is or is not a graveyard upon this land.

Another objection to the title is that Rosa Hanbury was entitled, as against certain persons under whom plaintiffs claim, to a life-estate, and that there is nothing of record showing her death. The evidence clearly proves the death of Rosa Hanbury, and the date of her death. This case is different from *Horovitz* v. *Mendel Real Estate &c. Co.,* 145 *Ga.* 866 (90 S. E. 57). In that case the purchaser of land under an executory contract agreed to buy if the title was satisfactory to him; and it was held that under a contract so conditioned the purchaser was entitled to receive a title

enabling him to hold the land free from the probable claim by another, and reasonably free from any doubt which would interfere with its market value; and that where the question of whether the title tendered the purchaser is fairly debatable, equity will not force the vendee to perform. In the case at bar the question of the validity of the title of the plaintiff is not fairly debatable, and there is no provision in the contract of sale in this case that the title was to be satisfactory to the purchaser.

7. In their motion for new trial the defendants allege that the court erred in admitting, over the objection that they were irrelevant and hearsay, the entries on execution docket B of Fulton superior court, and the entries on the docket of the sheriff, of the execution in favor of John C. Franklin against James R. D. Ozburn, principal, and Matthew Ozburn, indorser, and the entries of levy and sale under said execution, with the name of the purchaser thereof. If this ground is full and complete enough to inform this court of the contents of these entries, we are of the opinion that they were admissible against the defendants, for the reason given in the sixth division of this opinion.

. 8. Plaintiffs offered in evidence an affidavit of Thomas P. Hanbury, deceased, the averments of which are fully set out in the statement of facts preceding this opinion. Counsel for the defendants objected to the reception of this affidavit, upon the grounds that it was merely a statement by Thomas P. Hanbury, out of court, with reference to the title to this lot, a hearsay declaration of Hanbury, who was deceased, and that it was not admissible for the further reason that there was nothing in it binding on the defendant in reference to this title. The court overruled this objection, and stated to the jury that he was admitting this affidavit and certain correspondence as a history of the transaction, what "they claim" the parties did with reference to the alleged objections that were urged, and that the legal effect of this evidence was a matter that the court would take care of in the proper way, but that the court admitted the affidavit as part of the history of what the parties claimed was done. Movants excepted to the overruling of their objection, and to the admission of the affidavit in evidence, for all the reasons stated in their objection; and further alleged that the court erred, in connection with the admission of this affidavit over their objection, in failing to in-

struct the jury, at any time during the trial, that they should not consider said affidavit as any evidence of the truth of the facts therein stated. The history of this affidavit is as follows: Massell Realty Company employed an attorney to investigate the title to the property involved in this suit. This attorney reported that in six of the back deeds conveying the land of which the property involved is a part, an old graveyard was reserved, and that proof should be made that this graveyard was not located on the property involved. He further reported that the plaintiffs claimed title as heirs at law of Rosa A. Hanbury, and through other of her heirs at law; that Rosa A. Hanbury had a life-estate in this land; and that clear proof should be offered that she was dead and that the plaintiffs owned a full interest in fee simple. In order to furnish the proof thus required, this affidavit of Thomas P. Hanbury was made and turned over to Massell Realty Company. Thereafter Thomas P. Hanbury died. On the trial of this case it was necessary to prove that the plaintiffs, T. P. Hanbury and Leila G. Collings, were children of T. E. and Rosa A. Hanbury; that Rosa A. Hanbury was dead; that her husband, T. E. Hanbury, and her children Thomas P., Leila G., and Mary L. Hanbury, were her sole heirs at law. Clearly the declarations of Thomas P. Hanbury, touching the above matters, were admissible, he having died since the making of this affidavit. Pedigree, including descent, relationship, birth, marriage, and death, may be proved by the declarations of deceased persons related by blood or marriage. Civil Code, § 5764. The objection to the admission of this affidavit was that the declarations of the affiant touching the matters referred to in the affidavit were hearsay and not binding upon the defendants. Clearly the declarations of the affiant touching the pedigree of his father, his mother, and their heirs were an exception to the hearsay rule, and were admissible under the code section cited. Other statements in the affidavit, touching the title under which the plaintiffs claimed, and the existence of a graveyard, were clearly objectionable, and should have been excluded upon proper objection. The objection to the admission of this affidavit was urged to it as a whole, and to declarations therein some of which were clearly admissible, and some of which would have been inadmissible upon proper objection. It is a familiar rule that where objections are urged to evidence as a whole, some

of which is admissible and some of which is inadmissible, the court does not commit reversible error in admitting the evidence so objected to. Furthermore, the objectionable statements in this affidavit were shown to be true by the undisputed evidence in the case; and the admission of these statements, and the failure of the judge thereafter to instruct the jury as to their effect, do not require the grant of a new trial, as these errors were harmless.

9. The defendants complain that the court erred, at the conclusion of the evidence, in overruling their motion for a nonsuit upon certain grounds therein stated. It is now well settled that an exception to the refusal of the court to grant a nonsuit will not be considered by this court, where a motion for new trial is made which complains that the verdict is contrary to the evidence. *Martin* v. *Yonce,* 163 *Ga.* 694 (4) (137 S. E. 17).

10. The court in its charge construed the papers touching the sale of this land by the original plaintiffs to the Massell Realty Company, and instructed the jury that these papers constituted a legal and binding contract between the parties for the sale of this property, and for the indorsement of the notes by Ben J. Massell. There are other assignments of error on this charge, which are more fully set out in the statement of facts. In view of the rulings hereinbefore made in reference to these papers, we are of the opinion that the court did not err in giving these instructions, for the reasons assigned, or for any other reason.

11. Errors are assigned upon certain instructions as not supported by evidence, there being nothing in the evidence to show that said property was purchased by one in good faith at the sheriff's sale, or that the purchaser in good faith took it under a sale by the sheriff and entered into possession. There is evidence in the record that Mary E. Ozburn purchased the tract of land, which embraced the tract involved in this case, at sheriff's sale. It will be presumed that she purchased in good faith, in the absence of any evidence to the contrary; and it will be further presumed that she took possession of the property purchased by her at the sheriff's sale, possession of land following the legal title.

*Judgment affirmed. All the Justices concur, except Atkinson and Hill, JJ., who dissent.*

### ON MOTION FOR REHEARING.

We have withdrawn the original headnote numbered 8, and the corresponding division of the opinion, and have substituted the headnote now appearing 8 and the corresponding division of the opinion. In the original headnote and the corresponding division of the opinion we dealt with the ground of the motion for new trial therein considered upon the theory that it was imperfect in form. Upon reconsideration we think this was erroneous. We now deal with this ground upon the theory that it was good in form but bad in substance; and we have reached the same conclusion that we did in the original opinion. This renders it unnecessary to grant a rehearing, and the motion is denied.