No. 81.—ASA ROYALL, plaintiff in error, *vs.* THE LESSEE OF H. LISLE and others, defendants in error.

[1.] The person owning the title to land, is constructively in possession; and this possession continues until some adverse claimant goes into the occupancy, with intent to claim the fee, as against the true owner; and this intention may be manifested by declarations or by acts of ownership, which are open, notorious and visible.

[2.] If the occupant go in, under *paper title,* his possession extends to the boundary of his deed; otherwise, it is confined to the *possessio pedis,* or corporeal occupation.

[3.] As to what portion of the property may be considered in the occupant's possession, depends much upon the nature and situation of the property—the uses to which it can be applied, or to which the owner or claimant may choose to apply it—no general rule can be prescribed upon the subject. The intimation, as to what might amount to adverse possession, in *Conyers vs. Kenan & Hand,* (4 *Kelly & Cobb,* 308,) examined and approved.

[4.] The erection of a small cow-pen, on the boundary line separating two lots of land, and immediately contiguous to the defendant's improvements; the occasional felling of trees and permitting the cattle to range over the uncultivated land, are not, altogether, such an assertion, to the world, of claim of right, as against the true owner, as to constitute adverse possession.

[5.] The Act of 1851–2, (*Pamphlet Acts,* 239,) negatives, entirely, the idea of title, by occupancy alone, however *bona fide* it may be; and is therefore, *pro tanto,* a repeal of the Common Law.

Ejectment, in Marion Superior Court. Tried before Judge CRAWFORD, February Term, 1854.

The lessee of H. Lisle, brought suit against Asa Royall, for a lot of land. On the trial, the plaintiff introduced a grant to H. Lisle, in 1837—proved possession in Asa Royall, from 1st January, 1849, and the value of the rent. The defendant relied upon the Statute of Limitations, and showed that one Meredith Duke went into possession of the lot of land, in 1841 or 1842—cleared about an acre and a quarter, inclosed it and used it, sometimes, as a cow-pen, and sometimes, cultivated it. He also cut logs for a house, off of this land, during the time. In 1850, he sold and conveyed the lot to Asa Royall, the tenant in possession. The Jury found a verdict for defendant. The Court, on motion, granted a new trial, on the grounds, that the verdict—

1st. Was contrary to law.

2d. Was contrary to the evidence.

3d. Was contrary to the weight of evidence.

4th. Was contrary to the charge of the Court.

This granting of a new trial, is assigned as error.

Judge BENNING having been formerly of counsel in this case, did not preside.

TUCKER, for plaintiff in error.

S. JONES, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Do the facts in this case constitute adverse possession, so as to protect the defendant, under the plea of the Statute of Limitations?

He and those under whom he claims, owning the adjoining lot, inclosed a cow-pen on No. 87, embracing an area of 1¼ acres. The cattle of the defendant ranged over the land, and occasionally, trees were cut off of it.

[1.] I understand the doctrine to be briefly this : (I may be confounded, by reading and hearing read, too much on the subject, as Judges very frequently are,) the person owning the title to land, is, constructively, in possession; and this possession continues, until some adverse claimant goes into the occupancy, with intent to claim the fee, as against the true owner. And this intention may be manifested, by declarations or by acts of ownership, which are open, notorious and visible.

[2.] If the occupant goes in under paper title, his possession extends to the boundary of his deed ; otherwise, it is confined to the *possessio pedis* or corporeal occupation.

[3.] The question has often arisen, as in the present case, as to what portion of the premises may be considered in the occupant's possession. In *Conyers vs. Kenan & Hand*, (4 *Kelly & Cobb*, 308,) one of the then, as well as the present Court, intimated, rather than expressed, the opinion, that there might be an occupancy, which would ripen into a Statutory title, without an actual inclosure, marked by definite boundaries. That suggestion is abundantly fortfied by authority. The Supreme Court of the United States have held—and indeed, this may now be considered as the settled doctrine of that Court, and it is in accordance with the decisions of the ablest Courts in this country, that to constitute an adverse possession, there need not be a fence, building or other improvement made; and that it suffices, for this purpose, that visible and notorious acts of ownership are exercised over the premises in controversy, for the time limited by the Statute. That much depends upon the nature and situation of the property—the uses to which it can be applied, or to which the owner or claimant may choose to apply it. That it is difficult to lay down any precise rule, in all cases, but that it may be safely said, that where acts of ownership have been done upon land which, from their nature, indicate a notorious claim of property in it, and are continued sufficiently long, with the knowledge of an adverse claimant, without interruption or an adverse entry, by him, such acts are evidence of an ouster of a former owner, and an actual adverse possession against him ; provided the Jury shall think that the

property was not susceptible of a more strict and definite possession than had been so taken and held.   That neither actual occupation, cultivation or residence, are necessary to constitute adverse possession, when the property is so situated as not to admit of any permanent, useful improvement; and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim.   (*Ewing vs. Barnett*, 11 *Peters' R.* 53.   *Ellicott vs. Pearl*, 10 *Ibid*, 442.   *Barclay vs. Howell's Lessee*, 6 *Ibid*, 513.)

This doctrine is obliged to be true, because it results from the necessity of the case.   Suppose, for instance, in North Carolina, where the Courts hold, that the cutting timber is not such an occupancy as would amount to an adverse possession, would it not be otherwise, if the pine land was appropriated, yearly, to the making of turpentine?   And so, in the mountain districts of this State, the gold and copper mines are usually distinguished by the *number* of the lot on which they are found. Would any doubt that the occupancy and user of one of those lots, for mining purposes, for seven years, would not amount to an *adverse possession?*

[4.] Without pursuing this examination further, let us apply these principles to the facts of this case: Does the mere fact, that the owner of an adjoining lot, who incloses a small cowpen, contiguous to his houses, and immediately on the line separating the two lots of land, and who occasionally cuts a tree off the premises, and turns out his cattle to range over them, give such a Statutory title as will bar the plaintiff's right? The Jury found that it did; the Court granted a new trial; and we are decided and unanimous in affirming the judgment.

In Louisiana it has been held, that felling trees are not such acts of possession as are the basis of a Statutory title.   *McCarty vs. Fourcher*, (12 *Mart.* (*Louis.*) *Rep.* 11.)   And in North Carolina, it has been ruled, that neither cutting timber, nor cattle ranging over land, is such a possession as is calculated to give notice to the adverse claimant, that the land is occupied

and claimed by another.   *Green vs. Harman,* (4 *Dev. Rep.* 158.)

And we will add—that the erection of the little pen on the boundary adjacent to the settlement of the defendant, on his own lot, coupled with the other two facts, viz: the ranging of the cattle and the occasional felling of trees, is no sufficient assertion, to the world, of a claim of right.   To use the language of Chief Justice *Taylor,* in *Jones vs. Ridley,* (2 *N. C. Law R.* 400,) "such conduct bespeaks, rather the invasions of a conscious trespasser, than the confident claims of a rightful owner".

Were any or all of these acts, sufficient to put the owner upon inquiry?   Was the possession of such a nature and of such notoriety, as to amount to a disseizin?   Did they constitute notice to the true owner, that lot of land No. 87, was held and occupied, adversely, by another?   To give such effect to these acts, would not only work a great moral injustice, but shock the sense of every right, *felt,* by every honest man.   The true owner of land cannot be disseized, without his knowledge ; nor the Statute of Limitations run against him, while he has no ground to believe that his seizin has been interrupted, unless through his own negligence.   If, however, instead of a clandestine possession, it be open, notorious and visible, and accompanied with a claim of the fee, and the true owner fails to look after his interests, until the title of the tenant grows into maturity, by seven years' continuance, certainly he has no one to blame, but himself, for the loss of his estate.

[5.] The Act of 1851-2, (*Pamphlet Acts,* 239,) has been referred to in the discussion.   It has been supposed that this Statute was passed, to counteract some of the adjudications of this Court; and it may be so.   But it does more : it repeals an important principle of the Common Law, which had always been enforced in this State.   It negatives, entirely, the idea of title by occupancy, alone, however *bona fide* it may be.   Under this Act, the adverse claimant might enter upon the land, *bona fide* claiming it as his own, build upon it, clear and cultivate, under an actual inclosure, every acre, and continue in the

peaceable possession of the premises, for seven years, or a much longer time; still, the Statute would not protect him, unless he took possession, under *color of title,* and that colorable title not known, to him, to be fraudulent.

With the wisdom of this law, I have no quarrel. Law is a progressive science; and our Statute Book abounds with proofs, that the legislators of this day, are wiser, in their generation, than their English ancestors. Suffice it to say, that the Act has no application to the present case; for by its very terms, it cannot affect existing titles.