LOUISA N. HILL SPENCER v. B. C. JENNINGS.

February Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 4, 1921.

*Title by Adverse Possession—Elements of—Aqueduct Through Land of Another—Evidence.*

1. Evidence held sufficient to sustain a finding that the adverse possession by which a prescriptive right to maintain an aqueduct through land of another was acquired, was open, notorious, adverse, and under a claim of right.

2. In order to perfect title by adverse possession it is not necessary that the true owner should have actual knowledge or notice of the claim of the possessor; it is enough that the possession is open and notorious under claim of title.

3. That an aqueduct across defendant's land from a spring to plaintiff's house wore out and was replaced with new pipe by defendant was immaterial on the question of a previous acquisition of a prescriptive right to maintain such acqueduct.

APPEAL IN CHANCERY. Bill for an injunction to restrain the defendant from interfering with an aqueduct supplying the plaintiff with water. Heard on the pleadings and findings of

fact by the Chancellor at the June Term, 1919, Caledonia County, Stanton, Chancellor. Decree for the plaintiff. The defendant appealed. The opinion states the case.

*Dutton & Shepard* for the defendant.

*Shields & Conant* for the plaintiff.

MILES, J.   This is a proceeding in chancery to enjoin the defendant from interfering with an aqueduct supplying the plaintiff with water.   The case was tried by the chancellor on the pleadings in the case and oral evidence.   Findings were made, and a decree thereon rendered for the plaintiff, perpetually enjoining the defendant from in any way preventing the water from flowing through the aqueduct in question, or from interfering with the plaintiff's sole use, occupancy, control, maintenance, and ownership of the spring and aqueduct in question. From this decree the defendant appealed to this Court.

The chancellor found that about September 1, 1888, or prior thereto, L. W. Adgate, then the owner of the land upon which the source of water supplying the aqueduct was situated, gave to Edgar Hunt and Henry A. Babbitt, then the owners of the plaintiff's premises, an instrument in writing as follows: ''Agreement between L. W. Adgate and Hunt and Babbitt.   It being for a spring of water in the town of Hardwick, Vt., in the edge of the woods owned by L. W. Adgate, southerly from the meadow owned by the daughters of L. W. Adgate, with the right to place a tub or box in the spring and granting to the said Edgar Hunt and Henry A. Babbitt the sole and entire use of the water from said spring until such time as it will be needed to supply a dwelling house and barn on said Adgate's lot after which the entire and sole control of the water not needed for the said house.'' The instrument was signed by Adgate, and was recorded in the land records of Hardwick September 1, 1888.   The water has never been needed to supply any dwelling house or barn on the Adgate lot.

The findings further show that October 15, 1901, Adgate conveyed the premises on which the spring in question was situate to J. W. Hovey; that Hovey, on November 13, 1916, conveyed to the plaintiff by quitclaim deed the spring in question, with the right to box the same and to maintain an aqueduct

through his land in the same location as the same was then laid, always doing as little damage as possible and leaving the surface of the land in as near its former state as possible; that on October 24, 1917, Hovey conveyed the premises conveyed to him by Adgate to the defendant, who is still the owner thereof; that the aqueduct as originally constructed ran about six rods on the land then owned by Adgate; that it then ran about forty rods through land then owned by the daughters of Adgate, to the highway, and then across the highway to the buildings now owned by the plaintiff; that the defendant became the owner of the land owned by the Adgate girls across which the aqueduct ran January 19, 1915, and still owns the same, so the aqueduct in question now passes through the land of the defendant, from the spring to the highway.

The chancellor also found that shortly after Adgate gave the writing to Hunt and Babbitt they constructed the aqueduct. By what right Hunt and Babbitt constructed the aqueduct through the land of the Adgate girls does not appear. The plaintiff made no claim that it was by express grant, but claimed the right to have and maintain it where it is, under a prescriptive grant.

The findings further show that Hunt and Babbitt conveyed the premises now owned by the plaintiff to Joseph Massey March 2, 1893, and that Massey conveyed the same to the plaintiff May 28, 1915, and that she still owns the same.

[1, 2]  Various exceptions were taken by the defendant during the course of the trial, but only two are briefed. The principal one is to the finding of the court that "from the time this aqueduct was laid in 1888 down to the time repairs were made by the defendant in October, 1916, the use and occupation by the plaintiff and her predecessor in title was open, notorious, continuous, adverse, and under a claim of right during all said time." The other exception briefed was to the chancellor's failure to comply with the defendant's request to find "that at the time the defendant made the repairs on said water system in October, 1916, the said lead pipe had become worn out in places on the said Adgate girls' land owned by the defendant, so that the same had to be replaced with new pipe."

The ground of the first exception is that there was no evidence supporting the findings. That fifteen years of adverse possession will invest the possessor with title to real estate is so

well settled in this State that argument or citation of authorities is unnecessary. It is equally well settled that the burden of proving that fact is upon him who asserts it. There was evidence tending to show that the possession of the plaintiff and her predecessors in title was continuous for a length of time sufficient to invest her with a prescriptive title, and the defendant in his brief seems to so regard it; but he denies that there is any evidence tending to show that the possession was open, notorious, adverse, and under a claim of right. His contention is that, though the possession was continuous for the necessary period to create a prescriptive right, yet it was of such a character that the owner of the servient estate had no notice of it.

It is perfectly well settled, as claimed by the defendant, that, to create a prescriptive right to real property, the possession must be open, notorious, and of such a character as to attract the attention of the owner (*Barber* v. *Bailey,* 86 Vt. 219, 84 Atl. 608, 44 L. R. A. [N. S.] 98; *Arbuckle* v. *Ward,* 29 Vt. 43; *Wells* v. *Austin,* 59 Vt. 157, 10 Atl. 405), and no discussion of the law upon this point is necessary. The question is whether there is any evidence tending to show notice of such possession.

We think there is evidence tending to show it. The laying of the aqueduct, the length of this one, the digging up of the earth for that purpose, and covering the same, could not have been done secretly and without notice to the owner of the land. The chancellor finds that a short time after the aqueduct was laid, a barrel was placed over the aqueduct on the "Adgate girls' land" two or three rods from the barn on that same land, now owned by the defendant; that a pipe from that aqueduct brought water into that barrel for a time, and though water had ceased to flow into it for more than fifteen years at the time the defendant became owner of that land, the evidence tended to show that a remnant of the barrel and the pipe that carried the water into it was still there. Mr. Massey, who was the owner of the plaintiff's premises from March 2, 1893, to May 28, 1915, testified that water ran through that aqueduct to the buildings during all the time he owned them, except at occasional times when repairs were being made, such as happen in any such system; that while he owned the place he kept the pipe in repair. When asked if he knew where the line was between Doctor Adgate's land and the land of the Adgate girls, he answered: "I can't say the difference—Adgate girls and Adgate—they always was Doctor

Adgate's place. I can't say the difference between the two."
The answer is in broken English, but it is clear that the witness
meant that, during his ownership of the plaintiff's premises,
before Adgate sold to Hovey, the Adgate premises and the land
of the Adgate girls were used by Adgate in common as his own,
or as the agent of the girls. When Adgate sold the spring to
Hunt and Babbitt, who were then the owners of the plaintiff's
premises, he must have known that the purchase was for the
purpose of supplying the plaintiff's premises with water, and
that to use it for that purpose it would have to be carried across
other land than his own. If he did not understand that it was
to be carried across his daughters' land, he must have had his
attention called to it shortly afterwards, when the aqueduct was
being constructed.

The witness further testified that during the time he owned
the plaintiff's premises he had to clear out the pipe after every
heavy rain, and doing so had to use a force pump on many oc-
casions.

The evidence further tended to show that, during Massey's
ownership, some portion of the aqueduct froze, so water did
not flow to the buildings, and the pipe was dug up for a little
distance and cut, and the water brought into a barrel, and there
used during the remainder of the cold weather.

It can hardly be conceived that the aqueduct could have
been laid, the tub or barrel near the barn maintained for the
length of time indicated by the evidence, and remnant of it
left until the defendant became the owner in 1915, with the
pipe carrying the water into the barrel still there, the cleaning
out the pipe after every heavy rain, the frequent use of the
force pump, the freezing up of the pipe, and the bringing water
into a barrel, and the open use of the water, as shown by the
evidence, during the many years the aqueduct existed, with the
relation Adgate sustained to the Adgate girls and their land,
without the owners of the land through which the aqueduct ran
knowing all about it. The case abundantly shows that the
owners of the plaintiff's premises during their possession un-
furled their flag and kept it flying; so that the owner might see,
if he would, that an enemy had invaded his dominions and
planted standard of conquest. *Wells* v. *Austin*, 59 Vt. 157, 165,
10 Atl. 405.

In the absence of statutory provisions to the contrary, in order to perfect title by adverse possession, it is not necessary that the true owner should have actual knowledge or notice of the claim of the possessor.  2 C. J. 77, par. 59.  It is enough that the possession is open and notorious under claim of title, whether the true owner knew the fact or not.  2 C. J. 77, par. 59, and cases cited in note; *Jangraw* v. *Mee*, 75 Vt. 211, 54 Atl. 189, 98 A. S. R. 816; *Louisiana Lumber Co.* v. *Southern Pine Lumber Co.* (Tex. Civ. App.) 147 S. W. 604; *Hardy Oil Co.* v. *Burnham*, 58 Tex. Civ. App. 285, 124 S. W. 221.  Open, visible, and notorious possession being shown, the law presumes notice to the true owner.  Such possession is the equivalent of actual notice of the claim under which it is held, and if the owner fails to look after his interests until the title of the adverse claimant grows into maturity, he has no one but himself to blame for the loss of his estate.  2 C. J. 77, par. 59; *Royall* v. *Lessee of Lisle*, 15 Ga. 545, 60 A. D. 712.  There was no error in the chancellor's finding to which the defendant excepted; for there was evidence supporting it, and that is all that is necessary to uphold it.

[3]  We think the requested finding was complied with so far as the evidence warranted, but whether it was or was not is of no importance, and the defendants do not attempt to show how it is important upon any issue in the case.  If it were a question of license here involved, there might be some force to the request, but the right here asserted does not rest upon permission to maintain the aqueduct, but upon prescription which had been acquired long before the repairs were made in 1916. The matter requested was wholly immaterial, and the exception is without merit.

*Decree affirmed and cause remanded.*