ALROPA CORPORATION *v.* POMERANCE.

No. 13050.   March 25, 1940.

*Jones, Jones & Sparks* and *Cumming, Harper & Nixon,* for plaintiff.

*Hammond, Kennedy & Yow,* for defendant.

ATKINSON, Presiding Justice.  The rulings announced in headnotes 1, 3, 4, 5, 6, and 7 do not require elaboration.

■  There is no question about Alropa being a successor in title to the notes and mortgage executed by Warde to Mack, or that the notes and security were outstanding at the time of the deed from Warde to Pomerance.  That deed contained the clause:  "This deed is made subject to a first mortgage in the sum of three thousand ($3000) dollars, from Paul C. Warde and wife, to Chas. D. Mack, which as part of the consideration for this conveyance grantee assumes and agrees to pay."  A question arises, did the foregoing clause in the deed duly signed by the grantor, but not by the grantee, amount to assumption or agreement to pay the debt of Warde to Mack?  Mack was not a party to that transaction, and consequently Pomerance did not purport to agree with him to assume the debt of Warde.  Whether Pomerance promised Warde, as a part of the consideration of the deed to him, to pay the debt of Warde to Mack depends on the provisions of the deed, and application of the law.  It is declared in the Code, § 29-102:  "When a grantee accepts a deed and enters thereunder, he will be bound by the covenants contained therein, although the deed has not been signed by him."  This language first appeared in the Code of 1895, § 3600.  That Code was adopted by the legislature, and in virtue thereof its provisions became binding as a statute.  *Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831 (2) (31 S. E. 531, 42 L. R. A. 518); *Elder* v. *Home Building & Loan Asso.,* 188 *Ga.* 113 (3 S. E. 2d, 75, 122 A. L. R. 738).  A marginal reference to § 3600 embodied a principle involved in *Georgia Southern Railroad* v. *Reeves,* 64 *Ga.* 492, showing that it was founded on that principle.  The facts of the case referred to were that Reeves executed to the Selma, Rome and Dalton Railroad Company a deed conveying a right of way through his land, for location of the company's railroad.  The company was to build the road and pay Reeves $25 in money.  It was provided in the deed that "a depot and station"

should be permanently located on the land, to be used by Reeves and his assigns and the general public. Under that conveyance the company proceeded "to enter upon, locate, grade, and construct" the railroad, but failed to establish the station and build the depot. By proper conveyance the Georgia Southern Railroad Company succeeded to all the rights, privileges, franchises, and property of the Selma, Rome and Dalton Railroad Company; and the successor company having also failed to establish the station and build the depot, Reeves brought his action against that company. It was held by this court: "Where the grantor, in consideration of $25, and of the building of the railroad, conveyed to a company, its successors or assigns forever, in fee simple, the right of way through his land, and added in the deed the following words: 'It is hereby agreed and understood a depot and station is to be located and given to said Osborne Reeves, on the land or strip above conveyed, to be permanently located for the benefit of said Osborne Reeves and his assigns, and to be used for the general purposes of the railroad company,' the grantee, by accepting such deed, entered into a covenant to comply with its terms, and this covenant ran with the land and became obligatory upon any second company which became the purchaser, under proper legal direction, of all the rights, privileges, franchises, and property of the former."

It will be perceived that while the facts showed acceptance of the deed by the grantee, and *entry of possession* of the land by the grantee by constructing and maintaining the railroad on the right of way so granted, the language of the decision by this court went so far as to say "the grantee, by accepting such deed, entered into a covenant to comply with its terms," omitting express reference to the additional matter of *entry of possession thereunder*. When the legislature went to deal with the matter as in the Code, § 29-102, it could have stopped with the language "when a grantee *accepts a deed*," he will be bound, etc., as the decision of this court declared in effect; but the legislature did not stop there. It added, "and enters thereunder," etc., thus declaring the whole principle that the facts of the case involved. The purport of the statute was to put in the mouth of the grantee, by implication, a promise not expressed nor signed by him, but with the qualification that he "enters thereunder." These qualifying words can not be written out of the statute, but must be given effect. If they could be writ-

ten out of the statute, the preceding words which they qualify "when a grantee accepts a deed," could just as well be written out. If either were excluded, it would obviously defeat the legislative design. The qualifying words refer to entry of actual possession of the land, as was the fact in the *Reeves* case that called forth the enactment. On proper construction of the Code, § 29-102, applied to the instant case, there was no binding covenant in the deed from Warde to Pomerance that the grantee should pay the debt of Warde to Mack. This accords with the rulings in *Union City Really & Trust Co.* v. *Wright,* 138 *Ga.* 703 (76 S. E. 35); *Williams Co.* v. *American Tie & Timber Co.,* 139 *Ga.* 87 (76 S. E. 675); *Louisville & Nashville Railroad Co.* v. *Nelson,* 145 *Ga.* 594, 598 (89 S. E. 693); *Anderson* v. *Higginbotham,* 174 *Ga.* 565 (163 S. E. 477); *Smith* v. *Kingsley,* 178 *Ga.* 681 (173 S. E. 702); *Wiggins* v. *First Mutual Building & Loan Asso.,* 179 *Ga.* 618 (176 S. E. 636); *Federal Land Bank of Columbia* v. *Paschall,* 180 *Ga.* 224 (178 S. E. 659); *Interstate Investment Co.* v. *McCullough,* 188 *Ga.* 206 (3 S. E. 2d, 733); *Austell Bank* v. *National Bondholders Cor.,* 188 *Ga.* 757 (4) (4 S. E. 2d, 913), in which assumption of a debt by a grantee owed by a grantor to a third person, in virtue of a covenant expressed in a deed to the grantee, depended on both his acceptance of the deed and his possession of the property thereunder. If it is opposed to the ruling in *National Mortgage Cor.* v. *Bullard,* 178 *Ga.* 451 (173 S. E. 401), and *First National Bank of Quitman* v. *Rountree,* 173 *Ga.* 117 (159 S. E. 658), both decided on demurrer, or to *Ottauquechee Savings Bank* v. *Elliott,* 172 *Ga.* 656 (158 S. E. 316), the attention of the court was not called in those cases to § 29-102, supra, and that section was not construed or otherwise mentioned by the decisions rendered in those cases. Neither of those decisions is a binding precedent for construing or applying that provision of the Code; and consequently the rulings that it was erroneous to sustain the demurrers and dismiss the petitions do not require a ruling in the instant case that the clause of the deed in question amounted to a promise by Pomerance to pay the debt of Warde.

*Judgment reversed. All the Justices concur, except Bell and Grice, JJ., who concur in the result, but dissent from the ruling in division 2 of the decision.*

BELL, Justice. I concur in the judgment of reversal, but not in

all that is said in the opinion; that is to say, I dissent from the rulings contained in the second division of the decision. It is declared in the Code, § 29-102: "When a grantee accepts a deed and enters thereunder, he will be bound by the covenants contained therein, although the deed has not been signed by him." As stated in the majority opinion, this section appears to have been adopted in view of the decision in *Georgia Southern Railroad Co.* v. *Reeves,* 64 *Ga.* 492. It is considered by the majority to have varied the principle applied in that case, instead of merely codifying it. I can not assent to this view. In *Calhoun* v. *Little,* 106 *Ga.* 336 (3) (32 S. E. 86, 43 L. R. A. 630, 71 Am. St. R. 254), it was held that where a section of the Code has been codified from a decision of this court, it will be construed in the light of the source from whence it came, unless the language of the section imperatively demands a different construction. To the same effect, see *Wright* v. *DuBignon,* 114 *Ga.* 765, 769 (40 S. E. 747, 57 L. R. A. 669); *Seaboard Air-Line Railway* v. *Leader,* 115 *Ga.* 702, 703 (42 S. E. 38); *Davis* v. *First National Bank of Blakely* 139 *Ga.* 702 (78 S. E. 190, 46 L. R. A. (N. S.) 750); *Evans* v. *Brooks,* 182 *Ga.* 197, 206 (184 S. E. 800). "It has been several times held by this court that a section of the Code, not of original statutory origin, would be construed merely as a codification of the existing law, unless there be words in the section which manifestly demand a construction which would change the rule in force at the time the Code was adopted." *Wilensky* v. *Central of Georgia Railway Co.,* 136 *Ga.* 889, 891 (72 S. E. 418, Ann. Cas. 1912D, 271). In construing a section of the Code which is a mere codification of the general law and is not of original legislative enactment, decisions of other courts as well as our own may be looked to and considered. It was so held by this court, in *Bush* v. *McCarty Co.,* 127 *Ga.* 308, 310 (56 S. E. 430, 9 Ann. Cas. 240), construing a section of the Code relating to liability of a retiring ostensible partner. In *Southern States Portland Cement Co.* v. *Helms,* 2 *Ga. App.* 308, 316 (58 S. E. 524), it was stated by the Court of Appeals that two mentioned sections of the Civil Code relating to liability of a master to his servant "are not statutory in origin; they are mere codifications of particular phases of the law as applied by the Supreme Court in certain reported cases; and for the most part rest on statements culled in these cases from Wood's Law of Master

and Servant. As we said in *King* v. *Seaboard Air-Line Ry.*, 1 *Ga. App.* 88 (58 S. E. 252), *codification has given them no element of exhaustiveness*, but the whole law of master and servant exists just as it did before these sections appeared in our Code; and there are many phases of this branch of the law not covered by these two Code sections. We look to the general law as limiting, explaining, and extending their meaning." (Italics supplied.)

In reference to the various Codes adopted by the General Assembly as a general statute, it has been uniformly considered that the purpose of the Code was not to make changes in the law, but to arrange and declare the existing law. For instance, in *Lamar* v. *McLaren*, 107 *Ga.* 591, 599 (34 S. E. 116), it was said of the Code of 1895, that "unless the contrary manifestly appears from the words employed, the language of a Code section should be understood as intending to state the existing law and not to change it." In *Mechanics Bank* v. *Heard*, 37 *Ga.* 401, 413, it was said of the Code of 1863 that it should be kept in mind that the codifiers had no authority to originate new matter for legislative sanction, and that it is incumbent on those who assert that they went beyond their commission to prove such contention. The presumption is that a change in the law was not intended by the legislature. In *Atlanta Coach Co.* v. *Simmons*, 184 *Ga.* 1, 6 (190 S. E. 610), it was observed by Russell, Chief Justice, that "Where such a change by codification does appear, it must be given effect, not because of any power of legislation vested in the codifiers, but because of the adopting statute," and that if the question "is left in doubt or uncertainty," "this fact alone is a conclusive reply to the proposition that a change in the law was effectuated." In *Clark* v. *Newsome*, 180 *Ga.* 97 (178 S. E. 386), quoted with approval in that case, it was stated: "Even if the codifiers undertook to amend the law, it does not necessarily follow that the legislature intended to sanction their effort to do so. The proposed change must have been so conspicuous as to demand the inference that it was noticed by the lawmaking body, before the presumption against a change may be overthrown." In *Harvey* v. *Buchanan*, 121 *Ga.* 384 (49 S. E. 281), this court had occasion to construe section 3821 of the Code of 1895 (Code of 1933, § 105-110, slightly modified), relating to liability of an owner for injury to another by a vicious or dangerous animal. The section said nothing about knowledge of the

owner of the vicious or dangerous character of the animal. The court said: "This is but a restatement of the common law, and at common law in order to support such actions it was necessary to show, not only that the animal was vicious or dangerous, but also that the owner knew this fact." In *Rogers* v. *Carmichael*, 184 *Ga.* 496 (192 S. E. 39), it was held: "The statement that 'partners shall not be responsible for torts committed by a copartner,' adopted as part of the first Code and contained in each of the subsequent Codes, properly construed, is merely declaratory of the principle that a partner is not liable for the torts of a copartner solely in virtue of their relationship, and does not change the common-law rule as stated above." In *Mitchell* v. *Georgia & Alabama Railway*, 111 *Ga.* 760, 768 (36 S. E. 971, 51 L. R. A. 622), the same rule of construction was applied as against the contention that a stated Code section adopted in codification worked a change in the common law. Many similar cases might be cited.

It should also be remembered in this connection that statutes in derogation of the common law are to be strictly construed. *Yancey* v. *Lamar-Rankin Drug Co.*, 140 *Ga.* 359 (2) (78 S. E. 1078). "A statute must be construed with reference to the whole system of which it forms a part." *McDougald* v. *Dougherty*, 14 *Ga.* 674 (5). "It is dangerous to imply a legislative intent contrary to previous legislation from doubtful expressions which may admit of different interpretations." *Trustees* v. *Atlanta*, 76 *Ga.* 181 (3b). "In arriving at the meaning of a section of the Code, the rule to be followed is well settled, and declares that a section of the Code shall not be so construed as to the alter the law as it existed at the date of the adoption of the Code, unless such a construction is demanded by the terms of the section, and in cases where its language is ambiguous or of doubtful meaning that construction should be placed upon it which would keep in force the old law, rather than that which would bring into existence a new rule." *Forsyth Manufacturing Co.* v. *Castlen*, 112 *Ga.* 199, 205 (37 S. E. 485, 81 Am. St. R. 28).

From what is said in the prevailing opinion, it seems that except for section 29-102 the majority would unquestionably hold, on general common-law principles relating to contracts, that acceptance of the deed without more would be sufficient to bind the grantee. Under the most liberal view or interpretation of this section,

it contains only a negative pregnant to the contrary, which it seems would only present an ambiguity and would not show a clear intent to change the existing rule. "Statutes should be construed, if possible, to harmonize with the general policy of the State, unless the intent of the legislature is clearly to depart from that policy." 59 C. J. 1013, § 602. "In case of ambiguity, statutes are to be construed with reference to the principles of the common law in force at the time of their passage, and this rule applies whether the statute is merely declaratory of the common law or changes it." 59 C. J. 1039, § 617.

The headnote in the *Reeves* case, supra, did not refer to entry upon the land, but the opinion did; and in view of the foregoing principles it seems to me that the Code section here under consideration should be construed in the light of the whole decision, and as enacting into statute law nothing more nor less than was held therein. In that *particular case,* entry under the deed may have been necessary in order that the grantee might be bound. Under the terms of the deed, the railroad company manifestly was not bound to *build its railroad* upon the strip of land in question. It merely obtained the right to do so. If it had not seen fit to use and occupy the land for railroad purposes, or to enter at all under the deed, it of course could not have been compelled to do so; and so, under the facts of the particular case, the covenant to build a station would not become binding in the absence of entry. In the decision the court quoted from Taylor on Landlord and Tenant, § 245, to the effect that a covenant is an agreement under seal, and that it can be created only by a deed, either a deed poll or an indenture. It was held that the particular covenant there under consideration was a covenant running with the land. Is it not true then that section 29-102 should be construed as referring to the same type of agreement, that is, an agreement which must be made either under seal or by a deed? An agreement by a grantee to assume a debt owed to a third person by the grantor is not an agreement of either character. That is to say, it is not one that must be made under seal, and it can be made otherwise than by a deed. But even assuming that the word *covenant* as used in this section might include such an agreement to pay a debt of the grantor as part of the purchase-money, it does not follow that the agreement is not binding upon the grantee *unless* he enters under the deed. A state-

ment in a deed that the grantee, as a part of the consideration, assumes a debt of the grantor, is an original undertaking between the parties thereto, and is not within the provision of the statute of frauds relating to a promise to answer for the debt, default, or miscarriage of another. Code, § 29-102; *Ford.* v. *Finney,* 35 *Ga.* 258; *Davis* v. *Banks,* 45 *Ga.* 138; *Martin* v. *Copeland,* 77 *Ga.* 374 (3 S. E. 256); *Coldwell* v. *Cowart,* 138 *Ga.* 233 (2), 243 (75 S. E. 425); *Cowart* v. *Singletary,* 140 *Ga.* 435 (4), 439 (79 S. E. 196, 47 L. R. A. (N. S.) 621, Ann. Cas. 1915A, 1116); *Massell Realty Co.* v. *Hanbury,* 165 *Ga.* 534 (1 *b*) (141 S. E. 653). A promise so made, if based on sufficient consideration, may be valid and enforceable without any writing whatsoever. The acceptance of the deed in such case merely performs the office of showing assent or mutuality, and this is enough to render the agreement binding.

"A contract is an agreement between two or more parties for the doing or not doing of some specified thing." Code, § 20-101. "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject-matter upon which it can operate." § 20-107. The principle under discussion must not be confused by the fact that the creditor of the grantor is here seeking to enforce the assumption by the grantee. That fact is wholly immaterial in construing § 29-102, because in such case the sole question is as to the meaning of the section as between the grantor and the assumer grantee. It is true that if there is no valid assumption, the creditor of the grantor has nothing to enforce; but with this exception his right of action as against the grantee depends upon other principles which are not relevant in construing this section of our Code. The section has no reference whatever to the right of a creditor of the grantee, but relates only to the enforceability of a covenant between the grantor and the grantee. In the opinion of the writer, it can not be said on sound authority that a grantee who *actually intended to assume a debt of his grantor,* as stipulated in the deed, must not only have accepted the deed, but must also have entered into actual possession of the land, before the agreement can be held enforceable against him. The sole question is one of assent; and in the absence of fraud, accident, or mistake, mere acceptance of the deed is conclusive evi-

dence of such assent, and the agreement may be enforced regardless of any question of possession. Even if the section may be correctly held applicable to an assumption agreement, such as that involved in the present case, it should be construed as stating only that under certain conditions the assumer will be bound, without declaring or intending that he should be bound in no other circumstances. It simply declares that if the grantee accepts the deed and enters thereunder he will be bound. This is not a statement that he will not be bound *unless* he enters. In other words, the section can not properly be considered *as exhaustive of the conditions* under which a grantee may be bound, because, as indicated above, the assumption agreement is not within the statute of frauds, and, under general principles of law, all that is required as to the present element is a meeting of the minds, or "assent of the parties to the terms of the contract." Code, § 20-107. Surely neither the codifiers nor the legislature could have intended to alter or qualify this plain, fundamental common-law principle as to what is sufficient to make a valid contract. And yet the opinion of the majority amounts to a ruling that assent is not sufficient—there must be actual entry under the deed; and this notwithstanding the grantee has by delivery and acceptance of the deed acquired the unconditional title.

In this State "there is no livery of seizin. Possession is not necessary to the acquisition of title to land. Title goes out of the grantor and into the grantee at the moment of the delivery of the deed. The contract is thereby fully executed." *Beard* v. *White,* 120 *Ga.* 1018 (5), 1021 (48 S. E. 400). "The person owning the title to land is constructively in possession." *Royall* v. *Lisle,* 15 *Ga.* 545 (60 Am. D. 712). "He who has the title to land is to be deemed to be in the seizin and possession of it, and to continue so until ousted thereof by an actual possession in another, under a claim of right." *Stamper* v. *Griffin,* 20 *Ga.* 312 (3) (65 Am. D. 628). Since it must not be forgotten here that a creditor of the grantor is suing, let us notice the far-reaching consequences of the rulings made by the majority on the point under consideration. As hereinbefore stated, the question relates only to the liability of the grantee to the grantor on an assumption agreement. Suppose that, instead of a promise to pay a debt which the grantor owed to another, the deed had recited a promise by the grantee to pay to

14

the grantor himself the balance or all of the purchase-money which had not been paid on delivery of such deed. The grantee accepted the deed and thereby acquired title to the property with the right of possession as against the grantor. He was then entitled to sell or dispose of it as he might see fit. He has become for all purposes the absolute owner, with the immediate right to enter, although, for some reason of no concern to the grantor, he does not actually enter, before maturity of the purchase-money or before suit. Under the decision rendered by the majority, the grantor could not enforce the promise or covenant to pay the balance of the purchase-money, simply because the grantee had not actually taken possession of the land in virtue of the deed. The illustration here given would not call for application of a different principle, because in each instance the covenant is simply a covenant in favor of the grantor; and if a recited assumption to pay a debt owed by the latter to a third person would not be enforceable without entry under the deed, a recited agreement to pay to the grantor all or a part of the purchase-money would in like manner be unenforceable, in the absence of such entry. Manifestly, this can not be the law. Compare *Persons* v. *Dallas,* 178 *Ga.* 778 (174 S. E. 699).

If it might be thought that if the promise was to pay the purchase-money or a balance of purchase-money to the grantor, the latter might recover in assumpsit without regard to the covenant (but see *Young* v. *Young,* 150 *Ga.* 515, 104 S. E. 149; *Roberts* v. *Investors Savings Co.,* 154 *Ga.* 45 (6), 113 S. E. 398; *Renfroe* v. *Alden,* 164 *Ga.* 77, 137 S. E. 831; *Newsom* v. *Reynolds Chevrolet Co.,* 43 *Ga. App.* 376 (2), 158 S. E. 763), what if the whole and only consideration for the deed was a promise stated therein to the effect that the grantee would pay a debt of the grantor to a third person? In that case, in event of non-payment the grantor could not sue for the failure to pay the purchase-money to himself, because that was not the agreement, nor could he sue for damages for breach of the promise to pay the third person, since under the ruling of the majority the covenant is not enforceable in the absence of entry. The result is, that despite the fact that the parties have actually agreed upon the terms of the contract, and the grantee has accepted the deed and the title, the grantor is utterly remediless, for the simple reason that he can not force the grantee to enter under the deed. Attention is respectfully called to the fact that

although this section first appeared in the Code of 1895, and was thus incorporated by codification as a part of the statute law almost half a century ago, during which time liability upon such unsigned assumption agreements has been sustained by this court in numerous instances, not until this day has it ever been actually held that one who accepts a deed containing such an agreement is not liable thereon unless he also "enters thereunder." It is perhaps true that the precise question has not been heretofore affirmatively raised in this court; but this one circumstance would seem to show the consensus of the bench and bar of this State as to the meaning of this section. Stated differently, we have an implied contemporaneous construction by the judges and lawyers, covering a long period of time, to the effect that acceptance of the deed is sufficient to show assent, and to render the agreement enforceable without entry.

In *Kytle* v. *Kytle,* 128 *Ga.* 387 (57 S. E. 748), a deed contained a statement that the grantee was to support the grantor. In the decision by this court it was stated that "When the grantee accepted the deed, with this covenant therein, he became bound by its terms. *Atlanta &c. Ry. Co.* v. *McKinney,* 124 *Ga.* 929 [53 S. E. 701, 6 L. R. A. (N. S.) 436, 110 Am. St. R. 215]." In *Cowart* v. *Singletary,* 140 *Ga.* 435 (79 S. E. 196, 47 L. R. A. (N. S.) 621, Ann. Cas. 1915A, 1116), the deed in question contained a statement that Singletary, the grantee, agreed to pay up a balance of purchase-money due by the grantor, Caroline Cowart, to her vendor, in accordance with the terms of a bond for title issued by the latter to her. This court said: "The acceptance of this conveyance by Singletary bound him to carry out such covenant. *Kytle* v. *Kytle,* 128 *Ga.* 387 (57 S. E. 748). As between him and his grantor such an agreement to pay purchase-money was not within the statute of frauds." In *Self* v. *Billings,* 139 *Ga.* 400 (77 S. E. 562), Little executed to Sarah Ann Williams a deed to land, in which instrument he imposed upon her certain obligations, among them being one to support the grantor during his natural life. After part performance of the covenant, the grantor and the grantee in such deed conveyed the property to Mrs. Billings, this deed containing the stipulation, among others, that Mrs. Billings agreed and undertook to support and care for Little during the period of his natural life. This court stated: "By accepting the deed containing such pro-

visions the grantee committed herself to their performance." In *Ottauquechee Savings Bank* v. *Elliott,* 172 *Ga.* 656 (supra), the grantee in a loan deed securing payment of two notes transferred one of them, and executed to the transferee a deed of conveyance to the land described in the scurity deed, "subject and subordinate, however, to the loan deed hereinbefore referred to, . . with which deed the deed herewith shall not in any wise conflict, and the within deed to be available and enforceable only upon payment of" the note retained by the grantor. This court ruled: "Where a deed contains covenants upon the grantee, and the grantee accepts the deed, he would be bound by the covenants." In *Brice* v. *National Bondholders,* 187 *Ga.* 511 (1 S. E. 2d, 426), it was ruled: "When a grantee accepts a deed, and *thereby becomes bound* by the covenants therein, and the instrument is under seal, the period of limitation applicable to a suit brought for a breach of the covenant is twenty years." (Italics supplied.) The foregoing decisions were rendered after the adoption of the Code of 1895; and even where actual entry appeared, this court took no account of this fact as a condition of liability, in rendering its decision.

If § 29-102 can not be properly construed as changing the law, outside authorities are pertinent, and they might be relevant even in determining the previous law and in deciding whether a change was intended. Therefore I quote as follows: "It is stated generally in the text-books that an actual entry upon the demised premises by an assignee of the lease is not requisite in order to charge him with the performance of covenants running with the land. But we think this proposition will hold good only in respect of assignments by deed recorded and delivered; which are usually regarded as effecting a transfer, not only of title, but also of the legal possession." Sanders *v.* Partridge, 108 Mass. 556. "The acceptance of a conveyance containing a statement that the grantee is to pay off an encumbrance binds him as effectually as though the deed had been inter parties and had been executed by both grantor and grantee." Trotter *v.* Hughes, 12 N. Y. 74 (62 Am. D. 137). "Where land is conveyed subject to a mortgage for which the grantor is personally liable, and the deed declares that the grantee is to pay the mortgage as a part of his purchase-money, he is liable to the grantor for the amount of the mortgage, as the same becomes due, in an action of assumpsit." Rawson *v.* Copland, 2

Sandf. Ch. (N. Y.) 251. "He [the grantee] would be held bound by the agreement contained in the deed which he accepted." Atlantic Dock Co. v. Leavitt, 54 N. Y. 35 (13 Am. R. 556). "A deed-poll, when accepted by the grantee, becomes the mutual act of the parties, and the grantee is as much bound by its covenants as the grantor is." Midland v. Fisher, 125 Ind. 19 (24 N. E. 756, 8 L. R. A. 604, 21 Am. St. R. 189). "Where a grantee in a deed-poll knowingly accepts a deed in which the consideration is expressed as a certain amount, and 'other valuable considerations,' and such deed contains a clause that the grantee assumes the payment of a specified mortgage debt upon the land conveyed, he is as effectually bound by said deed as though it was an indenture inter partes." Brownson v. Hannah, 93 Fla. 223 (111 So. 731, 51 A. L. R. 976). In 14 Am. Jur. 483, § 4, it is stated: "And according to the great weight of authority, the acceptance by the grantee of a poll deed signed and sealed by the grantor, containing covenants to be performed by the grantee, binds the latter to the performance of these covenants as effectually as if he had executed the instrument." No mention of entry. In 15 C. J. 1211, § 5, it is stated: "The acceptance of a deed, whether poll or inter parties, containing a covenant on the part of the grantee, is equivalent to an agreement on his part to perform the same." No mention of entry. Tiffany on Real Property (3d ed.), § 848, contains the following statement: "In the case of a poll-deed, that is, an instrument sealed by one only of the parties thereto, a stipulation therein on the part of the person not sealing it is, by the weight of authority, regarded as the covenant of such person by reason of his acceptance of the conveyance, though there are well considered opinions to the contrary." "A contract may be formed by accepting a paper containing terms." 13 C. J. 277, § 76. See also 1 Restatement Law of Contracts, §§ 105-107, as directly supporting the views herein expressed.

In view of the foregoing authorities, and on principle, the writer is of the opinion that the grantee in this case, having accepted the deed containing a recital that he assumed the debt of the grantor, should be held liable on the covenant or promise, notwithstanding he did not sign the deed or enter thereunder, and that section 29-102 of the Code of this State, on proper construction, does not provide otherwise.

GRICE, Justice, concurs in the foregoing opinion.